BOARD OF EDUCATION OF CITY OF GRAND RAPIDS *v.* BROWN.

1. EMINENT DOMAIN—NECESSITY—EVIDENCE—DAMAGES.

Evidence of the damaging effect of a proposed public improvement on any portion of the public is competent to affect the question of public necessity.

2. SAME—EVIDENCE.

The admission of testimony tending to show damage from a public improvement to a portion of the public whose property is not to be taken for the improvement, is not error where the fact appeared from other competent testimony and from the view of the premises.

3. NEW TRIAL—REASONS FOR DENIAL—REQUEST FOR MORE SPECIFIC FINDING NECESSARY.

In the absence of a request for more specific reasons for the denial of a motion for a new trial, a case which contains no prejudicial error will not be reversed on appeal for the reason that the lower court made a general finding that he found no grounds for awarding a new trial.

4. SAME—MANDAMUS.

*Quære*—Is mandamus the proper remedy to compel the trial judge to file more specific reasons for denying a new trial?

Appeal from the superior court of Grand Rapids; Stuart, J. Submitted October 19, 1909. (Docket No. 122.) Decided December 10, 1909.

Proceedings by the board of education of the city of Grand Rapids against William B. Brown and Mattie Brown to condemn certain land for school purposes. From a judgment for defendants, petitioner appeals. Affirmed.

*Moses Taggart* and *Raymond M. Ferguson* (*Taggart & Taggart*, of counsel), for petitioner.

*Kleinhans & Knappen*, for defendants.

In 1907 the legislature passed an act conferring upon the board of education of the city of Grand Rapids authority and power to institute and maintain proceedings for the condemnation of private property for public use for schoolhouse sites, athletic grounds, and playgrounds, and for all purposes for which said board is authorized by law to acquire and hold property. Act No. 525, Local Acts 1907. Acting under this authority, the petitioner filed its petition in the proper court to condemn a small lot of land known as lot 8 of Briggs subdivision of lot 19, Coit & Curtis partition plat, of said city. A somewhat minute description of the property and its surroundings is essential to a proper understanding of the questions raised. The petitioner owns a schoolhouse site situated in the middle of a block, with a frontage upon the south along Fountain street 439.8 feet. On the west of said site is a school building now occupied as a grade school, but is eventually to be used as a gymnasium, in connection with a large high school building in the course of erection to the east, upon the other part of the site. The block in which this schoolhouse site is located is bounded on the west by North Prospect street, on the north by Lyon street, and on the

east by North College avenue. A street named Lyon Place extends from Lyon street. upon the north to the schoolhouse grounds, and over this street petitioner has access for all purposes. This street is located in the easterly part of said block, and enters the schoolhouse grounds 56.5 feet from its east boundary line. Briggs Court is located on the westerly part of said block, and is 57.3 feet from the westerly line of said schoolhouse site, prolongated north. Briggs Court is a paved street, is 30 feet wide, with a narrow sidewalk of about 3 feet on each side. The buildings are located close to the street line. The sidewalks and street are paved with concrete, and all the lots along it are occupied with houses except one. The lot in question is situated at the south end of Briggs Court, contains 150 square feet, rectangular on three sides, with a segment of a circle on the fourth. The object of the owner in platting this land and leaving the lot at the south end of the court as private property, was for the purpose of preventing its being extended through, thus making the court a *cul-de-sac*, attractive for residence purposes. The court has a water main and sewer. There are also water mains and sewers in Lyon Place, Fountain street, and North College avenue, and the other streets surrounding the block. The distance between the rear of the school buildings and the north line of the school grounds is about 30 feet.

The plat, introduced in evidence by petitioner, shows a public alley extending from the east side of the school site 142 feet north of Fountain street to North College avenue. Whether this is in fact a public alley cannot be determined from the record. If, however, it be a private alley, it extends to and opens into the school ground. The petition states " that it is necessary to take the said private property * * * for a schoolhouse site and grounds for the public use and benefit in said city of Grand Rapids." A large amount of testimony was taken. The jury viewed the premises and returned a verdict that the taking of this land "is not a necessary public improvement,

and that it is not necessary to take and use the private property described in the petition for the use and benefit of the public for the proposed improvement in said petition described." The verdict was subsequently confirmed by the court, and from the verdict and confirmation the petitioner has appealed.

GRANT, J. (*after stating the facts*). 1. The first and most important assignment of error relates to the admission of testimony. The petitioner's right to condemn is based upon the testimony of one member of its board and other similar testimony. Mr. Sheppard testified on direct examination as follows:

" If the board of education owned lot 8, the advantage would be access for pupils from Lyon street and the streets west and north of Lyon street, more direct and quicker than going around by Prospect street. It would enable the board to have a water main directly across, connecting the mains in Lyon and Fountain streets by joining onto the main already in Briggs Court, a six-inch main, bringing the water supply between the two buildings, increasing the efficiency of the supply in both buildings, enabling us to divide the sewer service from the buildings, sending a portion through Briggs Court to Lyon and the rest to Fountain street. It would be advantageous to have all kinds of supplies enter at the rear, and to be able to pass in or along Briggs Court and out by the other court, whichever it might be, and it would be much simpler to pass in one street and out the other than to turn behind the building."

This same witness, upon cross-examination, said that, as far as outlets for teaming, water, and sewage, the same advantages could be obtained by other outlets, but at considerable more expense. These outlets were upon the school grounds and the streets already open to the petitioner.

Another of petitioner's witnesses, Mr. Barlow, testified, under direct examination, after being shown the sizes of the mains in Lyon Place, Lyon street, Fountain street, and Briggs Court, that he thought a connection with the

water main and sewer in Briggs Court would be of advantage; and "it looks as though it would be a little handier for a good many of the children to come through Briggs Court." He also testified that without this piece of land the petitioner could get practically the same advantage by utilizing what they now have. This statement, of course, referred to water, sewage, and teaming. Evidence was given that it would be convenient to use a fire hydrant located near the south end of Briggs Court. The same witness, however, admitted that the hydrant could be placed without much expense upon the school grounds.

The city engineer, a witness for petitioner, testified that to carry a large sewer from Prospect street to the center of the school grounds, sufficient to take care of the sewage, would cost $994 in the street and $135 in the grounds. If from this arrangement the cost of the proposed improvement be deducted, the additional cost to the city would be small.

Several of the witnesses for petitioner admitted, on cross-examination, that the taking of this lot and its use for the purposes designed would be a damage to the property and residents on Briggs Court. The respondents offered similar testimony, which was received under objection and exception. This testimony was not admitted as affecting the question of damages, but as proper matter for the consideration of the jury in determining the public necessity which they must find before the land could be condemned. There was no claim on the part of respondents to recover any damages on this account. *Buhl* v. *Union Depot Co.*, 98 Mich. 596 (57 N. W. 829, 23 L. R. A. 392). It was admitted and submitted to the jury solely for its bearing upon the question of public necessity. Cases like *First Parish in Woburn* v. *County of Middlesex*, 7 Gray (Mass.), 106, do not apply. In that case a portion of the land surrounding a church, and belonging to it, was condemned for a public highway. The church and parish sought to recover damages for annoyance to

its worshipers by the use of the highway from noisy and dissolute persons riding for pleasure on Sunday. It was held that damages for this anticipated annoyance could not be recovered.

The damaging effect of a public improvement upon any portion of the public is competent for the jury to consider in determining whether there is a public necessity for making the improvement. Otherwise, those whose property it seriously affected, but who cannot recover damages, must close their mouths and be subjected to damages without a hearing. The residents upon Briggs Court are a part of the public, and they are the part of the public most seriously affected by the proposed improvement. Why should it be held that the benefit and advantage to one portion of the public must alone be considered, and not the damage and disadvantage to another portion of the public? Suppose there are 500 school children who, by going through Briggs Court, would save travel of 200 to 300 feet, and there are 500 residents upon this narrow street with their dwellings upon the street line, are not the 500 residents as much a part of the public as the 500 children? Must a jury in condemnation proceedings consider only the advantage—if it is one—to the children, a part of the public, and not consider the disadvantageous effect upon the residents, the other part of the public interested? If, however, it should be held that this testimony was inadmissible, we think the case falls within *City of Detroit* v. *Brennan & Co.,* 93 Mich. 338 (53 N. W. 525), where it was held that the verdict in a street opening case should not be set aside because of the erroneous admission of testimony that could not have misled the jury. There was little occasion for much of the testimony on both sides. The jury viewed the premises, and had the surroundings before them. They knew, as well as any witness could tell, what convenience or benefit it would be to the school children to be allowed to come and go through Briggs Court. It is apparent that those coming from the east on Lyon street would not be benefited,

and that those coming from the west on Lyon street cars could leave the cars at Lyon Place, and be nearer the schoolhouse than if they should leave the cars at North Prospect street, and go around to the front of the schoolhouse on Fountain street. In this event, they would have to walk no farther than if they could alight at Briggs Court, and walk through that street to the schoolhouse. The superintendent of the schools admitted that it would be no serious inconvenience to pupils to alight at North Prospect street and go around by Fountain street, 400 feet farther. Those who walked from the north and west would be compelled to walk the additional distance from Briggs Court to Lyon Place, 265 feet.

The jury had before them the sizes of the sewers and mains, the testimony of two engineers, and the facts in regard to the opportunity and ability of the petitioner to secure proper outlets without this improvement. It would seem that men of common sense needed no further testimony for their guidance than these facts, and their own view to determine whether this improvement was a public necessity. If there is any advantage to be obtained by connecting the water mains and sewers from the school buildings with those in Briggs Court, it seems apparent that that could be obtained without injury to the property or inhabitants of Briggs Court. All that would be necessary in that case would be to condemn a right of way under ground for the laying of the sewers and water mains. It also appears uncontradicted that the sewer in Briggs Court is not, in times of heavy rains, sufficient to carry off the water and sewage, and that at such times the water backs up into the cellars. Under these established facts, it would be a reflection upon the intelligence of the jury to hold that they were prejudiced by the testimony in support of the fact, patent to every one, that this proposed improvement would, if carried out, result in damage to the property and property owners on Briggs Court.

2. The errors assigned upon the refusal to give certain of petitioner's requests and upon the oral charge of the

court relate to the admission of the evidence above stated. It is therefore unnecessary to discuss them. The court very clearly stated to the jury the claims of the petitioner and of the respondents, and, under proper instructions, left them to determine the question of public necessity and damages. We find no error in the refusal to give the instructions or in the charge as given.

3. Counsel for petitioner made a motion for a new trial for three reasons, as follows:

*First.* Because the verdict was against the legitimate testimony.

*Second.* Because it was against the great weight of the testimony.

*Third.* Because the court erred in its rulings and instructions to the jury, and the refusal to give petitioner's instructions, and the several rulings of the court adverse to petitioner upon the objections made upon the trial.

The court filed a decision saying that, "after due and careful consideration of all the matters set forth in said motion, I do not find any error in the proceedings as claimed in said petition, nor do I find any ground or reasons for awarding a new trial, and therefore a new trial is denied." To this finding counsel excepted for four reasons:

*First.* Because the motion was not granted.

*Second.* Because the court did not file specific reasons for its refusal.

*Third.* Because every point made as a basis for a new trial was not passed upon.

*Fourth.* Because the finding is a mere statement of the conclusion of the court.

If counsel desired a more specific finding, they should have made application to the court for that purpose. *Quœre:* Would not mandamus in such case be the proper remedy? Appellate courts will not set aside a judgment and grant a new trial where no prejudicial error was committed upon the trial, because the judge has not filed a specific finding upon the motion for a new trial. The third reason why a new trial was asked is certainly as

general as is the finding of the court. It included more than 20 objections. The decision of the court, however, fully notified counsel that the court overruled all their reasons for a new trial. The first and third reasons have already been disposed of above. As to the second, we are of the opinion that the weight of evidence was clearly with the respondent rather than with the petitioner. Petitioner's evidence made out a case of some convenience and some saving of expense rather than a case of public necessity, which the law requires in order to deprive a man of his estate.

The judgment is affirmed.

OSTRANDER, MOORE, and McALVAY, JJ., concurred with GRANT, J.

MONTGOMERY, J. I concur in the result.