FELDMAN *v.* DETROIT UNITED RAILWAY.

1. NEGLIGENCE — INFANT — IMPUTED NEGLIGENCE — PARENT AND CHILD.

In actions brought by an infant in its own right the negligence of the parent is not imputable to the child; in actions brought by the parent for loss of services, the want of care of the plaintiff will bar recovery; in actions brought under the "death act" (3 Comp. Laws, § 10427), if the parent is the real beneficiary, his contributory negligence will be imputed to the infant.

2. SAME—STREETS—INFANT.

In an action by a parent as administrator, for the wrongful death of his infant son of the age of four years, who was killed by a street car, the fact that the child was unattended on the street at the time of the accident established *prima facie* the negligence of his parents, and whether their conduct should be excused or justified by the alleged circumstances was a question of fact for the jury.

3. EVIDENCE—DAMAGES—OPINION.

A witness who possessed no knowledge on which to base his conclusion, was not qualified to express an opinion that an infant's services would be worth to his father from $4,000 to $5,000 or more.

4. SAME — RES GESTÆ — ADMISSIONS — PRINCIPAL AND AGENT — DURESS.

Testimony that after the car struck the infant, and a crowd

had gathered about the conductor and motorman and had assaulted both and were threatening further violence, the motorman stated that it was his fault, is not admissible, since the statement was not voluntary or spontaneous.

Error to Wayne; Rohnert, J. Submitted April 9, 1909. (Docket No. 22.) Reargued January 10, 1910. Decided September 27, 1910.

Case by Max J. Feldman, administrator of the estate of Marvin Feldman, deceased, against the Detroit United Railway for the negligent killing of plaintiff's intestate. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*Corliss, Leete & Joslyn,* for appellant.

*George B. Greening* and *Friedman & Smilansky,* for appellee.

McALVAY, J. Plaintiff, as administrator of the estate of his son, Marvin Feldman, a child of the age of four years, brought suit against defendant for damages occasioned by the death of this child, claimed to have been caused by the negligence of the servants and agents of defendant. Plaintiff and his family lived on Winder street, in the city of Detroit, between Hastings and Rivard streets, at about the middle of the block. On Sunday afternoon, May 21, 1905, he, with his wife, were at home as he testified, "enjoying a Sunday afternoon rest." Some one of his relatives had given the boy some money. He went out of the house with his sister, who was seven years old. Plaintiff did not know where he was going. He was next seen on Hastings street going north on the east side of the street with a little girl. There is some doubt whether this girl was the sister. One witness testifies that it was his daughter, of the age of six years. When the boy had gone a short distance north on Hastings street, upon which there is a street car line of defendant company, he turned out into the street alone,

running across it, supposedly towards some candy shops located almost opposite. He was struck by an approaching car, and killed. It is admitted that this car had stopped at Napoleon street, next south of Winder street. There is a dispute as to whether it stopped at Winder street, and there is also a dispute as to whether the car was running fast or slow at the time of the accident. The record shows that the boy was 20 feet or more north of the corner of Winder street when he started to run across the track. The distance from this corner north to the alley is 97 feet. The outside length of the car is 35 feet. It was stopped about 2 feet south of the south line of the alley. It moved about 40 feet after striking the child.

No question is raised as to the competency of the motorman, nor as to his acts in stopping the car. There is a dispute as to whether the gong was sounded by him. When the accident occurred, the conductor was in the car, taking fares. He saw nothing of the accident. When he came out of the car, a crowd had gathered and set upon him, and assaulted him violently. The case was submitted to the jury and a verdict returned in favor of plaintiff, upon which judgment was entered.

Defendant brings the case here for review upon a writ of error. Errors are assigned upon the charge of the court, and the refusal to charge as requested relative to the contributory negligence of plaintiff, and also upon certain rulings upon evidence. The most important question in the case is whether, under the facts presented, the court was in error in charging the jury that—

"There is no testimony tending to show any contributory negligence on the part of the father, so that the question of whether or not there is a liability depends simply and solely upon the question whether or not the motorman was negligent."

The first question to be considered is whether, if plaintiff was guilty of contributory negligence, such negligence may be imputed to his infant child in this case. Upon the reargument of the case counsel for plaintiff gave

large attention to the question, and cited numerous authorities which he claimed supported his contention that such contributory negligence could not be imputed to the child in cases like this. This action was brought under sections 10427, 10428, 3 Comp. Laws, known as "Lord Campbell's Act," and commonly called the "Death Act." The profession is familiar with its terms. In all such cases the action must be brought in the name of the personal representative of the deceased,—

"And the amount recovered in every such action shall be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate," and "the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered."

In the instant case under this statute the suit is brought by the father, as administrator of the personal estate of his minor child who died intestate, alleging that as such he is entitled to what he would have earned had he not been killed by the negligence of defendant, and by such death plaintiff was damaged in that he lost the value of the services of his intestate. There is want of harmony in the authorities upon the question of the negligence of a parent being imputed to the child of tender years in actions for personal injuries to the child. We find from an examination of the authorities that the question has been considered by the courts in three classes of cases:

(1) In actions brought by the child in its own right. (2) In actions brought by the parent for loss of services. (3) In actions brought under Lord Campbell's act by the personal representative of the child to recover for loss of services to the parent.

In the first class of cases, by the great weight of authority, it is held that the negligence of the parent cannot be imputed to the child. In the second class the negligence of the parent will bar the action. In the third class, where, although the action is brought by the personal

representative for the benefit of the child, if the parent is the real beneficiary, his contributory negligence will be imputed to the child. The most recent discussion upon this question, where cases are cited and digested, and reference is made to all the leading authorities, will be found in the first two of the following cases: *Davis* v. *Railroad Co.*, 136 N. C. 115 (48 S. E. 591, 1 Am. & Eng. Ann. Cas. 214, and notes); *Atchison, etc., R. Co.* v. *Calhoun*, 18 Okl. 75 (89 Pac. 207, 11 Am. & Eng. Ann. Cas. 681, and notes); also *Ploof* v. *Traction Co.*, 70 Vt. 509 (41 Atl. 1017, 43 L. R. A. 108, 13 Am. & Eng. R. R. Cas. [N. S] 702); Tiffany, Death by Wrongful Act, §§ 68–72.

In this case the fact that this child was unattended upon the street at the time he was killed by the car established *prima facie* the negligence of his parents. Whether their conduct should be excused or justified by circumstances was a question of fact for the jury, and the court should have so instructed. *Grant* v. *City of Fitchburg*, 160 Mass. 16 (35 N. E. 84, 39 Am. St. Rep. 449). See, also, *Lindsay* v. *Railroad Co.*, 68 Vt. 556, at page 567 (35 Atl. 513); *Davis* v. *Railroad Co.*, *supra; Green* v. *Railway Co.*, 110 Mich. 648 (68 N. W. 988). The court was in error in charging the jury upon the question of contributory negligence as above quoted. As a new trial will be ordered, other questions must necessarily be passed upon for the benefit of the trial judge.

A witness named Jacobs was produced by plaintiff, and testified relative to the value of the services of plaintiff's intestate, to recover the loss of which this action was instituted. His examination shows that he had no knowledge upon which to base his opinion. He testified, over objection and exception:

"It looks like that, if the boy turned out anything like a success, he could get $4,000 or $5,000 or more."

This was his answer to a question as to what would be

the earnings of this child over and above its costs and expenses up to the age of 21 years. Witness had already said he could tell what his experience had been, but could not tell for others. It was the random, loose statement of a garrulous witness, and should have been stricken out as defendant requested.

A witness, over an objection, was permitted to testify that the motorman 15 or 20 minutes after the car struck the child, but before the body had been removed from under it, made the statement, "Gentlemen, it is my fault." A motion to strike it out was denied. It is urged that this was a voluntary and spontaneous statement, made by the motorman while in the discharge of his duty, and so near the time of the accident as to be part of the *res gestœ.* The witness states that a great crowd of a thousand people had gathered about the car; that they became noisy; that they were talking with the motorman when he made this statement. The record also shows that this crowd was violent; that the conductor as soon as the accident occurred ran to assist in getting the child out from under the car, but was prevented and not permitted to do so by this crowd, and was set upon by them and seriously assaulted and injured; that they also assaulted the motorman, and that the conductor ran to a telephone for police protection. This witness says that the motorman stood on the platform of the car with tears in his eyes. All of the authorities in discussing the admissibility of declarations of this character hold that such statements must be voluntary and spontaneous. Under the circumstances of this case, this statement claimed to have been heard by this witness cannot be held by this court to have been either voluntary or spontaneous. It is not necessary to know what the questionings of this angry and excited crowd were. They had already assaulted him and severely injured the conductor. The overwhelming inference from these facts is that whatever he said was under duress and in dread of personal violence. To extend the mantle of *res gestœ* to include statements so made would be repre-

hensible. For the reasons given, the testimony should have been stricken out. No opinion is expressed as to whether under other circumstances the motorman's statement would have been admissible. It was error under these circumstances to admit it.

Other assignments of error are discussed, but an examination discloses that they are of minor importance, and, in view of a new trial, and the probability that they will not arise again, we do not think they require attention.

The judgment, for the errors pointed out, is reversed, and a new trial ordered.

OSTRANDER, HOOKER, MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.