ROUSE *v.* MICHIGAN UNITED RAILWAYS CO.

1. ABATEMENT AND REVIVAL — DEATH — NEGLIGENCE — PERSONAL
   INJURIES—PARTIES—EXECUTORS AND ADMINISTRATORS.
   A right of action for personal injuries not resulting in the
   death of the injured person, survives after his death, and a suit
   for his damages, begun by him, may be continued by his per-
   sonal representative after his death, with the same effect,
   according to the same rules, and to recover the same damages,
   as if he were living and prosecuting his action in person.
   (3 Comp. Laws, § 10117.)

2. SAME—SURVIVAL OF ACTIONS—DEATH ACT—STATUTES.

Neither the death act (3 Comp. Laws, § 10427) nor Act No. 89, Pub. Acts 1905, affects such right of action or has any application to the manner in which it shall be pursued.

3. NEGLIGENCE—STREET RAILWAYS—CONTRIBUTORY NEGLIGENCE —INSTRUCTIONS TO JURY.

In an action for personal injuries caused by a collision of defendant's street car with the wagon of decedent, who claimed to have looked and perceived a car approaching at a sufficient distance to give him time to cross, if it had not been running at an excessive rate of speed, the trial court erred in stating to the jury that deceased saw the car approaching, where the plaintiff's testimony on that point was disputed.

4. DAMAGES—NEGLIGENCE—EVIDENCE.

Where plaintiff offered evidence that deceased could do no more during the second year after his injury than the first, and his testimony on a prior trial tended to show the extent of his damages, and where the court charged that no recovery could be allowed for the period after the death of decedent, or for disability caused by his last sickness, which did not result from his injuries, or for shortening his life, or for pain and suffering caused by his last sickness, it was not error to permit the jury to determine the loss subsequent to the first trial of the cause.

Error to Ingham; Wiest, J. Submitted January 4, 1911. ( Docket No. 22.) Decided February 1, 1911.

Case by Jennie Rouse, administratrix of the estate of Albert Rouse, deceased, against the Michigan United Railways Company for personal injuries. Judgment for plaintiff; defendant brings error. Reversed.

*Sanford W. Ladd* (*Merriam, Yerkes, Simons & Ladd*, of counsel), for appellant.

*Frank L. Dodge* (*Rollin H. Person*, of counsel), for appellee.

OSTRANDER, C. J. Albert Rouse sued the defendant to recover damages for personal injuries. A judgment in his favor was reversed. *Rouse* v. *Railways Co.*, 158

Mich. 109 (122 N. W. 532).   While the cause was pending in this court, on May 19, 1909, Albert Rouse died intestate. His death was not a result of the injuries inflicted by defendant.   His widow, Jennie Rouse, was appointed administratrix of his estate, a suggestion of the death of the plaintiff was made, and an order entered reviving the suit. The cause was again tried, and resulted in a verdict and judgment for the plaintiff.

Accompanying the bill of exceptions are 142 assignments of error, the most of which present the proposition, asserted by the defendant, that the right of action accruing to Albert Rouse in his lifetime did not survive his death.   The proposition is asserted in various ways. It is not important that the reasoning which is claimed to support it shall be recited.   A right of action for personal injuries not resulting in the death of the injured person survives his death (3 Comp. Laws, § 10117), and a suit for his damages begun by him may be continued by his personal representative after his death, with the same effect, according to the same rules, and to recover the same damages, as if he were living and prosecuting his action in person.   Neither the death act, so called (3 Comp. Laws, § 10427), nor Act No. 89, Public Acts 1905, affect such a right of action or have any application to the manner in which it shall be pursued.   In the decisions of this court no different conclusion has been stated or intimated.

With this statement, we dispose of all of the alleged errors which are relied upon, except those predicated upon a statement made by the court in the charge to the jury, to the effect that Albert Rouse, the injured person, saw the car coming, and those relating to instructions for measuring the damages of the plaintiff.

To understand the significance of the first of these contentions, it is necessary to refer to the declaration and to some of the testimony given at the trial.   Albert Rouse was driving south on the east side of Washington avenue, in the city of Lansing, with two horses and a wagon, the box or rack of which was 16 feet long.   He had thus proceeded

for a considerable distance. He attempted to drive from the east to the west side of the street, and while crossing, driving in a southwesterly direction, his wagon was struck by defendant's car, also going south, between the front and rear wheels of the wagon. Rouse was jolted or fell from the wagon, and was injured. In each count of the declaration it is alleged that, before attempting to cross the street, Rouse looked for and discovered the car approaching from the north, but at such a distance that, if it had proceeded at a lawful rate of speed, he had abundant time to cross the street as he undertook to do. It is alleged that the car was run at a speed of 30 miles an hour without giving warning by gong or bell of its approach. It is the claim of the defendant, and was stated to the jury by the court, that Rouse did not look for the car, but, when it was within a few feet of him, he drove upon the track, and was struck. At the last trial of the cause, the testimony of Albert Rouse given at the first trial was read to the jury. He said:

"Well, as I came up north of Madison street, about the center of the block, I looked around, and I thought I would cross up there at that street or along there, and I turned and looked north on the track, and I didn't see any train, any car, and I thought I would go across, and there was some one coming on the west side of the street and was going north, and I don't know who it was. They were trotting their horses so I drove on a little further until I came to the intersection of Madison street and the avenue, and I there looked back, and I saw the car at a little north or at about that street.

"*Q.* What street was that, the next street north of Madison?

"*A.* The next one north—I think it is Jefferson. I then turned and went diagonally across the track, or started, and got across the track with my horses and at that time—or my horses and the front part of my wagon, and at that time I felt a shock, and was taken very rapidly up the street.

"*Q.* Now, you say you crossed diagonally, which way was that, going southwest?

"*A.* I went at right angles. It would be northeast and southwest. In crossing it would be just like kitty-cornering across the street.

"*Q.* How long was it before you started to make the turn that you looked back to see the car?

"*A.* After I looked, I turned across the track immediately.

"*Q.* How far were you from the track, how far was your off horse from the track?

"*A.* I should think about four feet. I was driving right along by the side of the track, close to the track. I should think somewhere about four feet, possibly. My horses were walking.

"*Q.* About how fast—are you able to judge how fast they were walking?

"*A.* Well, yes; I should think they were going about four miles an hour, as near as I can judge.

"*Q.* Where did you say the car was when you looked?

"*A.* At Madison street or a street north.

"*Q.* In Madison street?

"*A.* Jefferson or the street north of where I went across. I think they call that Jefferson.

"*Q.* And did you notice anything about the rate of speed they were going at, anything particular?

"*A.* I could not say as to that. I didn't consider—no; I could not tell what rate of speed they were going.

"*Q.* You didn't notice anything unusual?

"*A.* I didn't notice anything unusual as to the rate of speed.

"*Q.* Now, make it clear just where it was, tell us first where it was you attempted to cross?

"*A.* At the intersection of Madison street and the avenue, at the north sidewalk.

"*Q.* At the north crosswalk of Madison?

"*A.* Yes; where the people would walk. What I mean by the sidewalk is where the people would walk, crossing, if the sidewalk went straight across there.

"*Q.* And whereabouts were you when you struck with reference to the crosswalk?

"*A.* It must have been right on the walk. My team had gotten across the walk. The wagon had a 16-foot box. The car struck the wagon just ahead of the hind wheel."

The charge of the court complained about, with its immediate context, was:

"Prudence dictates that one about to cross a street railway track should observe whether a car is near enough to interfere with reasonably safe crossing. So in this case, when Mr. Rouse started to cross the railway track, it was his duty to look and see whether a car was nearby, and act as a reasonably prudent man should act under the circumstances. Mr. Rouse saw the car coming, and it was his duty to observe the apparent speed it was traveling, so far as it was possible in the position he was to make such observation, and not to make the attempt to cross with the car coming, unless it was reasonable to believe it could be done in safety. And what he should have believed and should have done is to be determined by the standard of what a reasonably prudent man under the same circumstances would have believed and have done. That is the test, gentlemen, we have for determining reasonable care and prudence. What would an ordinarily prudent person under the same circumstances have done? Where did Mr. Rouse start to turn his team to cross the track? You have heard the evidence. It now rests for you to say. Where was the car when Mr. Rouse started to turn his team across the track? As I said before, it was the duty of Mr. Rouse when he wanted to cross the track to look and see where a car was, whether one was coming, and, if he saw one coming, then he was required to bring to bear upon the matter of whether he could safely cross with reasonable prudence. He was a user of the highway. He had a right to be upon the highway. He had a right to cross the track wherever he saw fit, provided he undertook to do so at a time when it was reasonably safe to cross."

We must believe that the statement that Mr. Rouse saw the car coming was inadvertently made, because there is abundant testimony tending to prove that he did not see the car at all and never looked for it. It was based entirely upon the testimony of Rouse. It is said in the brief for appellee that the court was "very careful not to offer any intimation as to whether Rouse turned to cross the tracks immediately after looking or not. That was the question in dispute." It is the intimate connection between the fact of looking and the fact of turning, as testified to by Rouse, which, more than anything else,

convinces us that the error was prejudicial and requires a reversal of the judgment.   His reason for looking for a car was his desire to cross the street.   A finding that he saw the car coming, based solely upon his testimony, strongly supports, if it does not necessarily involve, the conclusion that he immediately turned to cross the street. And thus it supports, if it does not involve, also, the conclusion that in the act of crossing he was in view of the motorman while he ran the car a block or more.   The statement that he saw, the car coming cannot well be separated from his purpose in looking and his testimony that he immediately attempted to cross the street.   There was positive testimony concerning the speed at which the car was run wholly inconsistent with the fact that Rouse looked and turned to cross the street as and when he said he did.   The motorman testified that he was watching Rouse, saw him turn across the street, and that he did not look just before he turned to cross.   A considerable number of witnesses testified that the wagon was south of Madison street when it was struck by the car.   A witness, a policeman, testified that shortly after he was injured, and before he was operated upon at the hospital, Rouse said to him, "What did I do, Hank—drive right in front of the car?"   This and other portions of the testimony, considered together, tend to support the conclusion that Rouse did not look for a car, and did not see the car which struck his wagon.

The last contention to be noticed appears to us to be without merit.   Mr. Rouse was injured March 8, 1907, and died May 19, 1909.   The testimony tends to prove that during the winter, or some part of it, immediately preceding his death, he was ill, and that the cause of his death was an affection of the heart.   Defendant requested the court to charge the jury that consideration of pecuniary loss should be confined to the period from his injury to April 23, 1908, when he gave his testimony at the first trial.   This proposition is, as we understand it, based upon

the idea that there is no competent testimony of any pecuniary loss after that time, and also upon the assumption that much of the time thereafter he was incapacitated by the trouble which caused his death. His wife, however, gave testimony tending to prove that during the second year after his injury he could do no more than he did during the first year. The court instructed the jury that compensation for loss of power to earn money could not be given for any period after his death, and must not go beyond the time of his last sickness; that the accident did not cause his last sickness, and, if he was disabled by his last sickness from working and earning money, such disability was not a result of his injuries; that no damages could be allowed for any loss of earning power resulting from his last sickness, none for expenses attending his last sickness, none upon the theory that his life was shortened by his injuries, none for pain and suffering caused by his last sickness. We believe the jury could not have misunderstood the instructions. We do not perceive how the defendant could have been prejudiced by them.

For the error pointed out, we feel obliged to reverse the judgment, and grant a new trial.

BIRD, BLAIR, HOOKER, and STONE JJ., concurred.