# APRIL TERM, 1912.*

LOVE v. DETROIT, JACKSON & CHICAGO RAILROAD CO.

1. NEGLIGENCE—SURVIVAL OF ACTIONS—ESTATES OF DECEDENTS
   — EXECUTORS AND ADMINISTRATORS — CONTRIBUTORY NEGLI-
   GENCE—PARENT AND CHILD.
   In an action for negligent injury and resulting death of an in-
   fant under six years of age, under the provisions of the sur-
   vival act (3 Comp. Laws, § 10117), brought by the father as
   administrator, the alleged contributory negligence of the
   mother does not bar recovery in behalf of the infant's estate,
   though the parents would have been sole distributees.

2. SAME—ACTIONS—STATUTES—DEATH.
   The statute applies to causes of action as well as to actions,
   and the right under it is property right which, having vested
   in the injured person, becomes an asset of the estate to be
   distributed after death of the injured person, as provided by
   the statutes of distribution.

3. SAME—DAMAGES.
   The same damages are recoverable as if decedent could in per-
   son prosecute his action.

4. SAME—INFANTS—CONTRIBUTORY NEGLIGENCE.
   Nor was plaintiff's intestate of sufficient age to be chargeable
   with contributory negligence.

5. SAME—IMPUTING NEGLIGENCE.
   The negligence of one parent is not imputable to the other.

6. EVIDENCE—EXPECTANCY—INFANTS—MORTALITY TABLES.
   The subject of inquiry being the probable length of life of an
   infant under six years of age, it was competent to show the
   age to which his grandparents and other ancestors attained.

7. SAME—DAMAGES—EARNING CAPACITY.
   Testimony tending to show the earnings of the child's father,
   wages of laborers, or carpenters, was competent.

*Continued from Vol. 169.

8. SAME.

The fact that the child's death occurred before he became a wage earner does not prevent an inquiry into the probable value of his services during his expectancy.

9. SAME.

A wide latitude must be allowed in the admission of testimony as to the child's status and future prospects, earnings, and other elements of damages.

10. SAME—INSURANCE—EXPERT EVIDENCE.

The opinion of an insurance expert that the child's expectancy was 53 years was properly received.

11. NEGLIGENCE—TRIAL—REQUESTS TO CHARGE.

Failure to give requests proffered by defendant's attorneys was not error, where the requested instructions assumed that plaintiff could not recover, although he might establish negligence in other particulars charged in plaintiff's declaration.

12. SAME—STREET RAILWAYS—FENDERS.

The Supreme Court will take judicial notice that electric railways operating their cars on public streets are accustomed to equip them with fenders or similar protective devices.

13. SAME.

Neglect to maintain such fenders was actionable negligence.

14. SAME—INSTRUCTIONS TO JURY.

The court did not err in advising the jury that defendant operated heavy, rapidly moving cars, propelled by electricity, dangerous to persons and property in the streets, and must use commensurate care; the jury not being given to understand thereby that the particular car which struck decedent was moving rapidly.

15. SAME—EXCESSIVE DAMAGES—NEW TRIAL.

A verdict of $2,000 for pain and suffering, and $2,500 for pecuniary loss was not so excessive as to require the reversal of the judgment.

16. SAME—APPEAL AND ERROR—MOTIONS.

Failure of the trial court to assign reasons for refusing a new trial does not present a reviewable point on error.

Error to Washtenaw; Kinne, J. Submitted November 23, 1911. (Docket No. 171.) Decided May 3, 1912.

Case by Clyde Elton Love, administrator of the estate of Frank Emerick Love, deceased, against the Detroit,

Jackson & Chicago Railroad Company for the negligent killing of plaintiff's intestate.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*M. J. Cavanaugh* and *George J. Burke*, for appellant.

*T. A. Bogle* and *H. L. Wilgus*, for appellee.

BLAIR, J.    This action was brought in the circuit court for the county of Washtenaw by Clyde Elton Love, as administrator of the estate of Frank Emerick Love, deceased, for the alleged negligent killing of said deceased by defendant railroad company.    Deceased, at the time of his death, was five years and five months of age. The administrator, plaintiff in this suit, and his wife are the father and mother, respectively, of said deceased, and his sole and only heirs at law and distributees.    Deceased came to his death on the 14th day of May, 1909, while riding on a tricycle in an attempt to cross the tracks of the city line, so called, of the said defendant railroad company, in the city of Ann Arbor, at the intersection of Monroe and Twelfth streets.    The accident occurred at 4 o'clock on the afternoon of said day, or shortly thereafter. The deceased was taken to the Homeopathic hospital in the city of Ann Arbor, where he remained alive until about midnight of the same day, or about eight hours after the accident.    The deceased had been in company with his mother on a visit.    The mother allowed or permitted the boy to go toward and across the railroad tracks, with the location of which she was entirely familiar, and where cars passed every few minutes, and to precede her by two blocks or more, and was on the opposite side of the street car track from him at the time of the accident.    The negligence claimed by the plaintiff as a basis for the cause of action was:

(*a*) That the car was running at an excessive rate of speed contrary to the ordinance; (*b*) neglect to provide

proper safeguards in the way of a fender; (c) inexperi-
enced and incapable servants.

This action was based on the survival act (section
10117, 3 Comp. Laws). The jury, after the charge of the
court, brought in a verdict in favor of the plaintiff for
"the sum of $2,000 for the suffering of Frank Emerick
Love from 4 o'clock p. m. until 12 o'clock, and $2,500 for
his expectancy in life for 37 years, being a total of $4,500."

Briefly, it is the claim of the defendant in this cause
that the verdict in said cause should be reversed because:

(1) The court should have directed a verdict for the de-
fendant in accordance with the motion to direct a verdict;
(2) the court erred in admitting testimony as appears by
assignments of error 1, 2, 3, 4, 5, 6, 7, and 8; (3) because
the court erred in refusing to give defendant's request to
charge, assignments of error 10 to 18, inclusive; (4) be-
cause the court erred in his charge to the jury as set forth
in assignments of error 19 to 28, inclusive; (5) because
the court erred in refusing to grant defendant's motion
for a new trial; (6) because the court failed to assign any
reasons for his refusal to grant a new trial.

1. The motion for a directed verdict presented the ques-
tion whether, where, as in this case, the parents are the
only heirs at law and distributees of the child's estate and
as such entitled to the whole amount recovered, the con-
tributory negligence of the mother would bar recovery by
the father as administrator. The circuit judge held that
it would not, and we have now to consider the correctness
of his determination.

The decisions of this court have established that:

The survival act (section 10117, 3 Comp. Laws) ap-
plies to rights or causes of action as well as to actions.
*Rogers* v. *Windoes*, 48 Mich. 628 (12 N. W. 882);
*Racho* v. *City of Detroit*, 90 Mich. 92 (51 N. W. 360);
*Roberts* v. *City of Detroit*, 102 Mich. 64 (60 N. W.
450, 27 L. R. A. 572); *Sweetland* v. *Railway Co.*, 117
Mich. 329 (75 N. W. 1066, 43 L. R. A. 568).

A right of action is as much property as is a corporeal
possession, and, under the survival act, vests at once in the

injured person upon the inflicting of the negligent injury, and, upon his subsequent death, becomes an asset of his estate to be collected and distributed in accordance with the administration statutes. *Berger* v. *Jacobs*, 21 Mich. 215; *Power* v. *Harlow*, 57 Mich. 107, 111 (23 N. W. 606); *In re Joslyn's Estate*, 117 Mich. 442 (75 N. W. 930); *Carbary* v. *Railway*, 157 Mich. 683 (122 N. W. 367); *Olivier* v. *Railway Co.*, 134 Mich. 367 (96 N. W. 434, 104 Am. St. Rep. 607, 3 Am. & Eng. Ann. Cas. 53).

"A right of action for personal injuries not resulting in the death of the injured person, survives after his death [3 Comp. Laws, § 10117], and a suit for his damages, begun by him, may be continued by his personal representative after his death, *with the same effect, according to the same rules, and to recover the same damages*, as if he were living and prosecuting his action in person. Neither the death act, so called (3 Comp. Laws, § 10427), nor Act No. 89, Pub. Acts 1905, affect such a right of action or have any application to the manner in which it shall be pursued." *Rouse* v. *Railways Co.*, 164 Mich. 475 (129 N. W. 719).

An administrator bringing the action in the first instance, as in the present case, is entitled to recover the same damages that the deceased could have recovered had he lived to bring the suit to a successful issue. *Olivier* v. *Railway Co.*, 138 Mich. 242 (101 N. W. 530).

A child of the tender years of plaintiff's intestate cannot be charged with contributory negligence, and the negligence of his parents cannot affect his recovery. *Shippy* v. *Village of Au Sable*, 85 Mich. 280 (48 N. W. 584); *Boehm* v. *City of Detroit*, 141 Mich. 277 (104 N. W. 626); *Johnson* v. *City of Bay City*, 164 Mich. 251 (129 N. W. 29).

"A right of action is as much property as is a corporeal possession and, in the case of a minor, is protected by the law in the same way and under the same securities. The mother could not release it even for full consideration and by the most formal instrument; much less, therefore, could she, by mere word of mouth when not under oath, or otherwise chargeable with responsibility, destroy his

right of action by her admissions." *Power* v. *Harlow*, 57 Mich. 107, 111 (23 N. W. 606).

It appears to us to be a logical and necessary inference from the above principles that the contributory negligence of the mother, if proved, which we are far from holding in this case, would not affect the right to recover. *Warren* v. *Railway*, 70 N. H. 352 (47 Atl. 735); *Wymore* v. *Mahaska County*, 78 Iowa, 396 (43 N. W. 264, 6 L. R. A. 545, 16 Am. St. Rep. 449); *Bradshaw* v. *Frazier*, 113 Iowa, 579 (85 N. W. 752, 55 L. R. A. 258, 86 Am. St. Rep. 394); *Westerfield* v. *Levis Bros.*, 43 La. Ann. 63 (9 South. 52); *Norfolk, etc., R. Co.* v. *Groseclose's Adm'r*, 88 Va. 267 (13 S. E. 454, 29 Am. St. Rep. 718); *Wilmot* v. *McPadden*, 78 Conn. 276 (61 Atl. 1069); *Southern R. Co.* v. *Shipp*, 169 Ala. 327 (53 South. 150); *Ploof* v. *Traction Co.*, 70 Vt. 509 (41 Atl. 1017, 43 L. R. A. 108); *Nashville Lumber Co.* v. *Busbee* (Ark.), 139 S. W. 301.

The case of *Feldman* v. *Railway*, 162 Mich. 486 (127 N. W. 687), was under the death act, so called (sections 10427, 10428, 3 Comp. Laws), where—

"The jury may give such damages as they shall deem fair and just with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered."

It was held that negligence of the parents would bar their recovery. That case is clearly distinguishable from the present case, in that there the declaration must aver and the proofs establish a pecuniary injury or loss to the persons specified in the statute, constituting a separate and distinct cause of action from that counted on in the instant case. *Hurst* v. *Railway*, 84 Mich. 539 (48 N. W. 44); *Ploof* v. *Traction Co., supra; Tucker* v. *Draper*, 62 Neb. 66 (86 N. W. 917, 54 L. R. A. 321).

It is further to be observed that the plaintiff was guilty of no negligence whatever contributing to the accident, and, in our opinion, the negligence of one parent is not

imputable to the other and therefore furnishes no bar to his recovery. *Atlanta, etc., R. Co.* v. *Gravitt,* 93 Ga. 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. Rep. 145); *Macdonald* v. *O'Reilly,* 45 Or. 589 (78 Pac. 753); *Donk Bros. Coal & Coke Co.* v. *Leavitt,* 109 Ill. App. 385; *Wolf* v. *Railway Co.,* 55 Ohio St. 517 (45 N. E. 708, 36 L. R. A. 812); *Cleveland, etc., R. Co.* v. *Workman,* 66 Ohio St. 509 (64 N. E. 582, 90 Am. St. Rep. 602); *Consolidated Traction Co.* v. *Hone,* 59 N. J. Law, 275 (35 Atl. 899); *Lewin* v. *Railroad Co.,* 52 App. Div. (N. Y.) 69 (65 N. Y. Supp. 49).

2. Assignments 1 and 2 are not based upon exceptions. Assignments 3 and 8 are based upon exceptions to rulings of the court permitting an answer to the following question by the father: State whether or not your grandparents are living, and in permitting the mother to testify as to the age of her father and other ancestors. Such testimony was competent. *Sterling* v. *Union Carbide Co.,* 142 Mich. 284 (105 N. W. 755).

The fourth, fifth, sixth, and seventh are grouped and considered together in appellant's brief. The fourth assigns error in permitting the father to testify to the amount of his salary. The fifth, upon denial of appellant's motion to strike out the testimony of plaintiff as to his salary and his financial ability and prospects of financial ability to educate his child. The sixth, upon permitting testimony as to the wages of common laborers. The seventh, upon permitting testimony as to the wages of carpenters.

From the nature of the case, the amount of the damages cannot be estimated with certainty either as to the element of pain and suffering or the element of future earnings after the age of 21; but this does not, as we have repeatedly held, deprive the injured person of all damages. *Hart* v. *Village of New Haven,* 130 Mich. 181 (89 N. W. 677), and cases cited.

The measure of damages is well settled in cases for negligent injuries under the survival act. *Olivier* v.

*Railway Co.*, 138 Mich. 242 (101 N. W. 530); *Davis* v. *Railroad Co.*, 147 Mich. 479 (111 N. W. 76); *Rouse* v. *Railways Co.*, 164 Mich. 475 (129 N. W. 719). The fact that the child's death has occurred before he has become a wage-earner does not foreclose inquiry as to the probable value of his services for the years ensuing his death. *Black* v. *Railroad Co.*, 146 Mich. 568 (109 N. W. 1052); *Braasch* v. *Stove Co.*, 153 Mich. 652 (118 N. W. 366, 20 L. R. A. [N. S.] 500).

To enable the jury to determine the probable earning capacity of the child for the period of his probable life after arriving at the age of 21, a wide latitude must necessarily be allowed in the admission of testimony as to the child's status and future prospects and the vocations and their remuneration which might reasonably be expected to be open to him. We are therefore of the opinion that the rulings complained of were not erroneous. *Snyder* v. *Railway Co.*, 131 Mich. 418 (91 N. W. 643); *Jeffries* v. *Railroad Co.*, 129 N. C. 236 (39 S. E. 836); *Walters* v. *Railway Co.*, 41 Iowa, 71; *Fishburn* v. *Railway Co.*, 127 Iowa, 483 (103 N. W. 481).

Counsel for appellant also argue in their brief that the court erred in admitting the testimony of an insurance expert as to the child's expectancy of life. We are unable to find any assignment of error presenting this point. We are all of the opinion, however, that such testimony was competent. *Walters* v. *Railway Co.*, *supra*.

3. Counsel argue in their brief that—

"The fourth, fifth, sixth, and seventh requests to charge were entirely reasonable. These requests contained a fair statement of defendant's theory of the case, and the court's refusal to submit them to the jury was prejudicial to the rights of the defendant."

The motorman testified that, when about 125 feet from the west crosswalk on Twelfth street, he got a signal to stop on the east side of the street; that at the same time he saw the child come out on Twelfth street and afterwards stop about 15 feet from the track; that as soon as he got

the signal he shut off the current, applied the brakes, and began to slow down; that when he got within about 60 feet of the west crosswalk, seeing the child stop, he turned on the power again to carry him across Twelfth street for his signaled stop, running at about four miles an hour; that when he got within 15 feet of the crosswalk the child suddenly started across, and thereupon he did everything in his power to stop the car, but it was then impossible to do so.   The four requests referred to were based upon this testimony and were not given unless, as claimed by plaintiff, they were covered by the following portion of the charge:

· "If you find from the evidence that the motorman in charge of defendant's car saw the plaintiff's intestate in time to have avoided the accident by reversing the power, and did not do so, and that by reason thereof the accident occurred, this constituted negligence, and your verdict must be for the plaintiff.   Unless you find from the evidence that the child stopped when he saw the car approaching, and that the motorman in the exercise of due care and prudence under all the circumstances of the case had good reason to believe, and did believe, that the child did not intend to cross the track until after the car had passed, if you find from the evidence that the motorman was justified in believing that the child did not intend to cross the track, and that the car was not running at more than eight miles an hour, and the motorman when he saw that the child did intend to cross the track reversed the car and did all in his power to avert the accident, then the defendant would not be liable in this case, unless you find from the evidence that the defendant was guilty of other acts of negligence which caused the accident.   If you find from the evidence that this accident was unavoidable and not due to any fault or negligence on the part of the defendant, then the verdict should be for the defendant."

We think the portion of the charge sufficiently stated defendant's theory of the case, provided such statement was not nullified by the qualification "unless you find from the evidence that the defendant was guilty of other acts of negligence which caused the accident." This question we consider under the next head.

4. We consider, in connection with the question last above referred to, the assignment of error upon the following portion of the charge:

"It is the duty of the defendant in equipping its cars to provide reasonable and proper safeguards in general use in order to prevent or minimize injury, in case of accident. In this connection, you may consider the effect of the absence of a fender upon the car which did the damage, upon the duty of the motorman to use more care in controlling the car without such device."

Among other duties of defendant averred in the declaration is the following:

"* * * And it became and was the duty of said defendant so to equip its said cars with fenders on the front end thereof that in the event of striking any such child upon said crossing said child would be picked up by and would fall upon any such fender, and thus avoid the serious injury of any such child, or would thereby have been warded off and away from said track without serious injury."

The testimony discloses that there was no fender on the car at the time of the accident. This court will take judicial notice of the fact that it is the custom of electric railway companies operating their cars in the public streets to equip them with fenders or some similar device, and that their object is the protection of the public engaged in ordinary business or travel upon the streets, whence arises a duty on the part of defendant as averred in the declaration and charged by the court. *Spiking* v. *Power Co.*, 33 Utah, 313 (93 Pac. 838); *Noe* v. *Railway Co.*, 133 Mich. 152 (94 N. W. 743); *Ensley* v. *Railway*, 134 Mich. 195 (96 N. W. 34); *Mayer* v. *Railway*, 142 Mich. 459 (105 N. W. 888); *Mayer* v. *Railway*, 152 Mich. 276 (116 N. W. 429). The defendant's requests covered by this portion of the charge required a verdict regardless of its negligence in failing to equip the car with a fender, although the jury might have found, accepting the motorman's testimony as true, that at the slow rate of speed testified to by him the presence of a fender would

have prevented or very much lessened the injuries. We find no error in this part of the charge.

Error is also assigned upon the following portion of the charge:

"At the time the accident occurred, the defendant was operating heavy, rapidly moving cars propelled by electricity, dangerous to persons and property in the streets where men, women, and children were and had a right to be, and capable of causing serious injury and death, unless properly controlled. It was therefore the duty of defendant to exercise in the control and management of its cars at this time and place a degree of care commensurate with the peril involved."

We do not think this portion of the charge is subject to the criticism made by counsel for defendant, that it gave the jury to understand that in the opinion of the court the particular car which struck the child was at that time running rapidly.

5. Our examination of the record has fully satisfied us that the objection that the verdict is against the weight of the evidence is without foundation. Neither do we think that we would be justified in holding that the verdict was excessive as to the amount allowed for pain and suffering. The family physician testified:

" The right leg was virtually severed above the knee, the left leg was badly bruised, and the pelvic and hips on both sides were badly bruised. I found a young medical student had placed a tourniquet upon the limb above the point of the injury close to the body to control the hemorrhage. * * * I had known this boy ever since he was born. He was a vigorous, healthy boy, and had been during his whole life. The boy recognized me before I did him in his dirty mangled condition. In connection with his crying out in pain, he said to me, ' Dr. Kinyon, can't you do something for me ?' That was the first I knew anybody knew me. He was groaning and complaining of pain. Crying out with pain."

The father testified:

" My boy died at four minutes before midnight on May 14, 1909, and his age was five years and five months.

"*Q.* State whether or not you were present at the time he died.

"*A.* I was.

"*Q.* State how long before he died you had been with him, immediately before.

"*A.* Since about half past 4.

"*Q..* State whether or not he suffered during that period of time.

"*A.* He did.

"*Q.* State what indication of suffering he gave.

"*A.* He moaned and cried out. A little later, after he had returned from the operating room, he put his hand down towards his leg, and cried out very strongly: 'Let go! Let go!" And continued doing that for some time.

"*Q.* State whether or not you had any conversation with him or anything of that sort.

"*A.* Yes; I asked him if he knew us, and perhaps two or three or four other questions, and he answered them by nodding his head.

"*Q.* State whether or not he was conscious after the operation and before his death.

"*A.* If I understand exactly what constitutes consciousness, he certainly was."

Whether a verdict is excessive or not in a case like this presents a question of fact and not of law. There is no definite standard for measuring in dollars and cents the extent of pain and suffering and mental anguish, and although the statute casts upon this court the duty of reviewing the estimate of the jury, we are not inclined to substitute our estimate for that of the jury except in cases where the damages are so clearly excessive as to justify the conclusion that they were the result of partiality or prejudice. *Johnson* v. *City of Bay City*, 164 Mich. 251 (129 N. W. 29).

6. The point presents no question for review. *Grand Rapids Board of Education* v. *Brown*, 159 Mich. 148 (123 N. W. 562).

The judgment is affirmed.

STEERE, MCALVAY, BROOKE, and BIRD, JJ., concurred.