ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS v. T. J. ANDERSON.

Decided January 13, 1910.

**Master and Servant—Negligence—Contributory Negligence.**

The foreman of a fencing crew in service of a railway, having charge of the operation of a hand car carrying the crew to the place of labor, ran the car into an open switch, causing its derailment and his injury. The switch had been opened to permit the entry of a train to a packing house on the siding and left in that condition during a delay incident to the necessity of icing the cars of packing house products. It was properly set and bore a

target indicating that the switch was open, which could easily be seen by the foreman on approaching it on his car. No other provision was made for warning operators of hand cars of the position of switches, and they were expected to observe how they were set on approaching them and to lift the hand cars over them if open, and this customary method of operating them was known to the foreman, who, through inadvertence, failed to notice how the switch was set, which a glance at it on approaching would have disclosed to him. Held:

(1) That no negligence on the part of the defendant railway was shown by these facts, the warning against open switches by the position of the switch target being adequate to protect those operating hand cars with due care.

(2) That plaintiff, the foreman, was guilty of contributory negligence in failing to observe the condition of the switch on approaching it.

Appeal from the District Court of Titus County. Tried below before Hon. P. A. Turner.

The judgment in plaintiff's favor was first reversed and the cause remanded, in an opinion which has not been designated to be officially reported. On motion for rehearing by appellant, the judgment was reversed and rendered in favor of appellant. Writ of error was granted and this judgment, first affirmed by the Supreme Court, was, on motion for rehearing, reversed and the cause remanded. Anderson v. St. Louis S. W. Ry. Co., 104 Texas.

*Glass, Estes, King & Burford, E. B. Perkins,* and *D. Upthegrove,* for appellant.

*B. O. Evans, J. P. Copeland,* and *L. E. Kenny,* for appellee.

LEVY, ASSOCIATE JUSTICE.—We are of the opinion that the appellant's motion for rehearing should be granted and its assignments of error numbers 14 and 23 should be sustained. The assignments present the question of negligence *vel non* of appellee in the facts of the case.

As stated in the main opinion, shortly before appellee came down the track to the point of injury some cars were run in on the siding, and the switch properly set to the siding, for the purpose of bringing out a train-load of meat from the packeries. An unexpected delay in icing the meat caused a delay of the train on the switch-track. The switch, as before stated, was properly set for the side-track, and was properly equipped with a switch-target, or signal, plainly visible and indicating the position of the switch and the track that it was set to at the time of the injury. No defective situation as to the switch, track or appliances in any manner appears or is relied on in the case. The switch and tracks were in the yard, or switching limits.

By this petition appellee claims that appellant, through its employes, negligently left the switch open to the main line and set to the side-track, and that such condition and position of the switch was unknown to him. The pleadings and evidence would not warrant the ruling that a switch temporarily and properly set to a siding constituted a defect as such in the road-bed or track. Pleasants v. Raleigh etc. Ry. Co., 121 N. C., 492, 61 Am. St., 674, 28 S. E. 267. It was

conclusively shown that the particular rules in evidence had application only to regular trains, and not to handcars. A handcar is not run on schedule time, and is employed only as a vehicle of or convenience for transportation of the particular crew, and when operated is lifted over the switches.

The question in the facts of the case pointedly arises, was the appellant guilty of negligence in leaving the switch set to the switch-track? Appellant had the legal right, and it was a proper exercise of such right, to use its switch-track in the proper way in conducting its necessary business inside its yard limits. The appellant had the right to direct the movements of its trains by signals alone, if the signals on same were adequate to give notice and warning and the signification known to the employes. Hannibal & St. J. Ry. Co. v. Kanaley, 39 Kan., 1, 17 Pac., 324. In the latter case it is said: "The law only requires that the means adopted shall be brought to the knowledge of its employes, and that they be reasonably well calculated to secure the safety of the employes if obeyed." In such use of the switch-track it conclusively appears that the appellant had equipped the switch-stand that works the switch, as stated in the main opinion, with a switch-target, or signal, showing a red space and standing as high as a man. The purpose of the switch-signal target is to warn the direction for which the switch is set at the time, and to indicate whether open or not to approaching trains; and same stood about five feet from the track, and was plainly visible for a sufficient distance before reaching same. It conclusively appears that it was the duty of operatives of handcars within the switch limits, as was known to appellee, to look out and discover the position of switches, and that it was the custom, as known to appellee, not to line up switches in the yard limits with handcars, and that appellee knew there was a switch in the yard. The switch-track was there on the ground ahead of him, and he saw it as plainly as he did the main line he was on. While appellee was at the present time serving as a foreman of the fencing gang, using a handcar as a vehicle of transportation (and it was under his control), yet it affirmatively appears, as admitted by him, that he had for some years worked for appellant in a section crew and was entirely familiar with the mode and manner of operating a handcar as he had done. In the circumstances stated, the relative duties due from the appellant and appellee to each other are evident. If in the use of the switch-track the appellant adopted, as it did, the method and custom of giving notice of the switch position and condition by means of the switch-signal target, then appellee had the right to expect a proper discharge of this duty, to inform him of the use and position of the switch-track, so as to enable him to protect himself against injury in operating the handcar. Appellee in using the track in the yard and operating a handcar therein, owed the duty of lookout for the switch and to discover its warning. Did appellant discharge its duty? Appellee states, as to the target, "I don't know whether this switch had one or not;" but this statement of his is made clearer, and determines its probative force, in his evidence later on when, in respect thereto, he testifies: "I don't remember noticing, I don't know positively." He nowhere

denies that the target was there and properly set. All the witnesses in the case testifying in respect to the signal are positive that it was there and properly set. A witness of the appellee, and a member of his crew, says he saw it at the time of the injury. Robbins, a person standing near, said: "I saw a handcar run off. I could tell by the target that the switch was open, the target on the switch-stand. . . . I looked to see and could see that it was open by the target." All others corroborate this. Two minds could not differ on the evidence in the record that there was a switch-signal target and that it was properly set at the time of the injury. Appellee admits that he was approaching the switch-track with his handcar under control, and that "on the ground there was no obstruction between me and the switch-stand." The evidence is conclusive that the track was straight for a long distance and the switch-signal target plainly visible, and that there were no obstructions to the view. Appellee admits that "If I had looked at the switch-stand or target I could have seen it, I expect, 75 or 100 yards before I got to it. . . . That would have been in ample time to have stopped. . . . I could have stopped in 30 feet." Before reaching the switch an automatic derailer was passed, it conclusively appears, and the appellee had the handcar set over the derailer, and he says, "When I set the handcar over I could have seen the switch-stand, if I had looked." Did he know the signification of the target? He admits that he did. He says: "The target shows what position the switch is in. . . . If I had been looking directly at it I could have known it was thrown for the side-track. . . . I would have stopped the car." He further says that if he had looked he could have seen and known the position of the switch by "a mere glance," "just a flash of my eye." He admits that he failed to look for the signal, though having, by his own admission, ample opportunity and time to do so. It being conclusively shown that a switch-signal target was there properly set and ample and sufficient to warn, unceasingly and unerringly, against running into the switch, could appellee reasonably ask the jury to find, and the court to sustain the finding as warranted, that the switch-signal target was not there properly set, or that its warning or notice was not adequate or sufficient to protect him if he had merely glanced or flashed his eye in that direction, as he was in duty bound to do? It follows, we think, that if culpable negligence of appellant proximately causing the injury must in the facts of this case be predicated, and we do not think it could be, on either the failure to give warning or the insufficiency of the warning, then in either event appellee has failed to show negligence on appellant's part. Where essential facts in the record are such that only one conclusion can be drawn from them, the court should instruct a verdict. Joske v. Irvine, 91 Texas, 574, 44 S. W., 1059; Sanchez v. Railway Co., 88 Texas, 119, 30 S. W., 431.

A finding by the jury that appellee was himself not guilty of negligence proximately causing the injury is contrary to the weight of, and is not warranted by the evidence. It is admitted by appellee that he did not keep a lookout for, or even look at all in the direction or towards the switch in front of him at any time in coming

down the main line track towards the switch. It is admitted by him that "if I had looked at the switch-stand or target I could have seen it" by "a mere glance" or "just a flash of my eye." He further admits, "I could have seen it, I expect, 75 or 100 yards before I got to it. . . . That would have been in ample time to have stopped. . . . I could could have stopped in 30 feet." As before stated, he admits its signification and purpose, and admits that had he seen it he would have stopped the car. Appellee gives as his reasons for not looking at the switch or signal, that it was because he was intently watching a freight-train at the depot ahead of him, and because a negro man riding on the handcar was standing in front of him at the time and in the way of his looking, and because there were several bridges under the track to pass over and he did not want to get caught on them if the freight-train should move towards him. The switch-stand and signal were standing five feet to the right of the track, and appellee was riding on the right of the car approaching the switch, and the switch-stand stood about as high as a man's head, and there were no obstructions on the ground to appellee's view. None of the reasons given by him, in the record, would justify his failure to look towards the signal, as he had merely to move his head around the negro to see, by a mere glance or flash of the eye, the signal. He admits that the freight-train was standing still a quarter of a mile ahead of him. He says in respect thereto, "The train was standing still. . . . The switch was between me and the train I was looking at. . . . I suppose the train was about three or four hundred yards from the switch." It may be true that appellee did not know at the time how long the train might stand there, but it is true that at the moment it was standing still, and it is true that it did stand still till appellee reached the switch, and afterwards. In this state of facts, he could not claim that his mind was so perturbed by the appearance of danger to him as that he could not exercise care to attend to his duty to look for other dangers. Even if such appearance upset his calm thought and prudent action in other matters, still it appears, as admitted by him, that he had ample opportunity and time, before this time, to look at the derailment point for the switch. When lifting the handcar over the derailment there was no reason given or apparent in the record why appellee did not look, as at that time there was nothing to keep him from looking or to distract his attention. He admits that at the derailment point in the yard, and before he reached the switch, he could have seen the switch if he "had looked." It conclusively appears, therefore, that appellee had opportunity and time to see and look for the switch and its warning, and simply neglected to look, and could have seen by the simple act and exertion of looking, and have averted his injury, as he admits, by looking. He failed to do so and was injured, under the admitted facts. Could he reasonably predicate a recovery if his injury was due to his own want of care? We think not.

Because in the record there is a want of legal liability, the judgment, we think, should be reversed and here rendered for appellant with all costs.

*Reversed and rendered.*

Writ of error granted. Judgment of Court of Civil Appeals was at first affirmed, but on motion for rehearing was reversed and the cause remanded. Anderson v. St. Louis S. W. Ry. Co. of Tex., 104 Texas.