FT. WORTH BELT RY. CO. v. McKINNEY.†

(Court of Civil Appeals of Texas. Texarkana. Feb. 22, 1912. Rehearing Denied March 14, 1912.)

1. MASTER AND SERVANT (§ 129*)—INJURY TO SERVANT—NEGLIGENCE—PROXIMATE CAUSE.

The foreman of a switching crew was injured by collision of an engine on which he was riding with a horse on the track. The railroad allowed bushes to grow up on its right of way. The horse on leaving the bushes and approaching the track and climbing up the embankment to the track was in view of the trainmen. The foreman saw the horse in time to avoid a collision, and signaled the engineer to stop, but he misunderstood the signal, and increased the speed of the engine, until it collided with the horse. Held, that the proximate cause of the accident was not the existence of the bushes, which were but a mere condition.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

2. MASTER AND SERVANT (§ 129*)—INJURY TO SERVANT—PROXIMATE CAUSE.

An employé suing for a personal injury must prove negligence proximately causing the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

3. APPEAL AND ERROR (§ 1031*)—ERRONEOUS INSTRUCTIONS—EFFECT.

Where the court on appeal cannot say that the jury did not base its verdict on an erroneous paragraph of the charge, the error is reversible.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4038–4046; Dec. Dig. § 1031.*]

4. MASTER AND SERVANT (§ 228*)—INJURY TO SERVANT — CONTRIBUTORY NEGLIGENCE — STATUTES.

Act April 13, 1909 (Acts 31st Leg. [1st Ex. Sess.] c. 10), relating to contributory negligence, in force at the time of an injury to an employé and at the time of the trial, controls the defense of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. § 228.*]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by J. A. McKinney against the Ft. Worth Belt Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Appellee was the foreman of the switch-engine crew, and practically in charge and control of the train, and had stationed himself, for the performance of his duties, on the footboard of the tender of the engine. The engine was coupled head-end to a string of cars, loaded with cattle, being hauled from the south part of the city to North Ft. Worth. It was about 2 o'clock a. m. The track of appellant ran in a general north and south direction, and crossed a public dirt road, which ran east and west, where the injury in suit occurred. About 300 feet south of the public road was a bridge. After leaving the bridge, and for nearly the distance to the public road, the roadbed is a "fill," or dump,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Application for writ of error dismissed by Supreme Court.

about 12 feet high. About 15 or 20 feet distant from the bottom of the dump, and on the right of way on the east side, near the bridge, a bunch of willows was growing on a space of about 14 feet square. On this occasion a horse was standing in or by the willows, left the same, and continued on straight up the dump of the roadbed to the top thereof, reaching the top about the time the train reached that point. On reaching the top of the dump, the horse turned his head north and commenced running, on the dump, beside and parallel with the engine, in the direction of the public road crossing some 120 feet distant. When the public road crossing was reached, the horse, having during the time gained a distance of about three feet ahead of the engine, started suddenly to cross the track west in the public road, instead of going east down the road. There was no obstruction in the dirt road to keep the horse from turning down the road east. As the horse started to cross the track the beam on the engine struck the fore part of his body, and knocked him from the track. In the contact with the engine the horse's head struck appellee on his body, knocking him clear off the footboard and against a switchstand. Appellee did not actually see the horse, he says, when he was in or by the willows, but saw him after he left the willows and came to the embankment of the dump near the engine. As soon as the horse started running beside and parallel with the engine, appellee gave a signal to the engineer to stop the train. The engineer interpreted the signal to mean to go faster, and started to do so, thus meeting the horse at the crossing. All the train crew saw the horse on the dump and while he was racing with the engine towards the public road. According to appellee's evidence, the train was running at such a rate of speed that it could with safety have been stopped by the time or before the public crossing was reached.

Lassiter, Harrison & Rowland, for appellant. Bell & Milam, for appellee.

LEVY, J. (after stating the facts as above). [1] The court charged the jury as follows: "If you believe from the evidence that the defendant had allowed bushes to grow up and remain on its right of way at a point just east of where the plaintiff was injured, and that, in consequence thereof, those in charge of the locomotive in connection with which the plaintiff was working could not see the horse which afterwards struck plaintiff, and that as a result of allowing the bushes and brush to grow upon its right of way the place at which the plaintiff was injured was not a reasonably safe place under all the circumstances of the case at which plaintiff could work, and that the defendant had failed to exercise reasonable care in allowing said bushes and brush to grow or remain on its right of way, and that such failure under all

the circumstances of the case constituted negligence, and that plaintiff received injuries as a result of the brush and bushes being so allowed to grow upon the right of way of defendant, then you will find a verdict for the plaintiff." The appellant by proper assignment contends that it was error to authorize a verdict for appellee for the failure to remove the bushes in evidence from the right of way, because the evidence conclusively shows that the bushes being on the right of way was not the proximate cause of the injury to appellee.

It was claimed by the plaintiff in Eames v. Railway Co., 63 Tex. 660, that the brush permitted to grow over the right of way was of such a character as that it obstructed the view of the operatives of the moving train while passing over the track at the place of his injury, and prevented them from seeing animals on the right of way before the same came in dangerous proximity to the moving train. In passing on a demurrer to the petition, the court said that on the face of the petition, under the facts alleged, negligence proximately causing the injury might properly and reasonably be inferred by the jury. According to the petition in that case as reported, the injury was said to have been occasioned by the fact that "a cow jumped suddenly from behind a clump of bushes which was growing on the right of way near the track, upon the track in front of the train, and, being caught by it, was run over, causing the two foremost cars to be derailed." If the brush growing on the right of way was of such a character as to obstruct the view of the operatives of the engine of any animal that might be on the right of way at the time the train was passing, and because of the obstructed view the operatives were prevented from seeing such animal in time to control the movement of the train before said animal got suddenly "upon the track in front of the train," or in dangerous proximity to it, then clearly the causal connection is there shown between the negligence charged and the injury resulting therefrom. The facts of the instant case, though, present, we think, quite a different situation from the case above. The brush on the right of way claimed to be of such a character of growth as to constitute an obstruction to the view of the operatives was shown to be a bunch of willows growing on the east side on a space of ground about 14 feet square. The outer edge of the willow growth nearest the railway was distant 15 or 20 feet from the bottom of the dump constituting the roadbed. This dump was shown to be 12 feet high, and continuing almost the entire distance to the crossing. It appears from the record that looking from the train going north in either direction from the bridge to the public road crossing there is, except for the growth of willows, a clear, unobstructed view to the operatives of the train of the right of way and of animals that

might be thereon. According to the record, the willow growth beneath the track would and could only possibly operate to obscure the view to the operatives of the train of a horse on the right of way while the horse was in or immediately by the willows. As soon as the horse would leave the willows, assuming that he was in them, then, according to the record, there was nothing to prevent the train operatives from having full view of him on the right of way and before he started to climb up the dump to the railway track from below the bridge south on north to the crossing. It is made conclusively to appear that after coming out of the willows, before the horse could reach even the bottom of the dump, he would have to travel in a clear, unobstructed space of 15 or 20 feet from and outside of the willows, and in such clear space the horse would be plainly visible from either direction to operatives of the train on a track 12 feet above, and without any obstructed view of the horse by reason of the willow growth. It further conclusively appears that, after the horse reached the bottom of the dump, he would, in order to reach to the track above, have to still further climb up the steep embankment of 12 feet. It conclusively appears that while the horse was climbing the embankment he would still be in a clear, unobstructed space and view to the operatives of the train for some distance before reaching the track, and that the willow growth beneath would not affect or interfere with the view, in this respect, of the operatives on the engine above. There is no pretense in the evidence that there was any possible chance for a collision to occur between the horse and the engine, or that the horse would be in any dangerous proximity whatever to the engine, until after he had climbed the embankment and reached the top of the dump. And it is further made conclusively to appear that, if the willows had not been there at all, the opportunity of seeing the intention of the horse on the right of way below to climb up the embankment from the bottom of the dump would from the viewpoint of the train operatives have been no greater nor have given more ample time in which to safely control the movement of the train in respect to the horse than was afforded on this occasion. If, as according to the proof here, there was no possible way for the horse to be either near or in dangerous proximity to the engine or the track until he had first climbed the embankment to the top of the dump, and further, if, as was here shown, the willow growth was not of such a character by reason of its location and situation with reference to the track and the view of operatives of the ·engine, as to obstruct the view of such operatives, or in any way prevent them from seeing the horse approaching the dump or track in time to safely control the movement of the train, then the only reasonable conclusion to be drawn is that as soon as the horse began climbing the embankment, and was getting in dangerous proximity to the train, appellee saw the horse and in time to govern the movement of the train in accordance with the danger which appeared to him to exist. According to his evidence, the appellee was the foremost of the employés stationed on the engine, and was foreman and practically in charge and control of the train. According to his further testimony, giving to it the strongest force and effect, when the horse started running beside and parallel with the engine, he at once gave the signal to the engineer to stop the train, but the engineer did not stop it. The rate of speed was such, according to appellee, that the train could have been stopped with safety by or before it reached the crossing. The engineer understood the signal to be to run faster, and began to do so. The appellee gave the signal to stop because he feared the horse might run ahead of the engine and in doing so try to cross the track. So long as the horse ran with and parallel to the engine, it conclusively appears there was no possible way for a collision to occur. Considering all the evidence for appellee, which is uncontroverted, the willow growth being on the right of way was shown to be a mere condition, and not the proximate cause of the injury.

[2] It is not sufficient merely to prove negligence, but it devolves upon the plaintiff, in order to recover, to also prove that such negligence, if any, was the proximate cause of the injury.

[3] Speaking to the proof in this record, it was error, for the reason given, to authorize a recovery distinctively on the alleged ground here complained of, and, as we cannot say that the jury did not found its verdict upon this part of the charge, such error constitutes reversible error.

[4] The sixth, seventh, and eighth assignments of error complain of the refusal to give certain special charges bearing upon contributory negligence. These special charges required the jury, upon the finding that the acts stated therein constituted contributory negligence, to return a verdict relieving the company of any liability. According to the record here, the injury occurred November 9, 1909, and the suit was filed and.trial had subsequent to that date. The Act of April 13, 1909, p. 279, relating to contributory negligence, was then in force. In consequence, speaking to those special charges as offered, it was not error for the court to refuse them.

It is not likely that the questions presented by the other assignments will arise on another trial, and such assignments are not here considered.

In passing we expressly state that it should not be understood from any statement herein made of the facts proven that we think the act of the engineer was the negligence proximately causing the accident. We

do not directly or indirectly pass on that question, nor any other of the alleged grounds of negligence, as none of the other grounds besides the willow growth are in any way before us for ruling.

The judgment is reversed for the error indicated, and the cause remanded for a new trial.