### PANHANDLE & S. F. RY. CO. v. TISDALE et al. (No. 1234.)*

(Court of Civil Appeals of Texas. Amarillo. Nov. 7, 1917. On Motion for Rehearing,. Dec. 12, 1917.)

1. RAILROADS ☞344(1)—OPERATION—CROSSING FLAGMAN.
   Where petition alleged that view of travelers approaching crossing in village was obstructed by cars and temporary depot, it was not error to overrule special exception to the petition charging negligence in failing to have a flagman or watchman at the crossing.

2. APPEAL AND ERROR ☞742(3) — SCOPE — PRESERVATIONS OF EXCEPTIONS.
   Assignment of error to overruling a special exception found in the special answer referred to and made a part of the assignment, but not followed by proposition or statement, the court being asked to adopt the proposition and statement under the previous assignment, neither the exception nor the paragraph appearing in the brief, which made no reference to the transcript or statement of facts where the necessary facts might be found, could not be considered.

3. EVIDENCE ☞244(10)—DECLARATION—AUTHORITY OF CORPORATE OFFICER.
   In an action for death of wagon driver when struck by a train at crossing in village, under allegation of negligence in failing to have crossing flagman, conversation of division superintendent and trainmaster discussing advisability of putting in warning bell at such crossing was admissible, though it occurred prior to destruction of permanent depot and erection of temporary one, which was in existence when the accident occurred.

4. APPEAL AND ERROR ☞1052(5)—HARMLESS ERROR—EVIDENCE—ADMISSIBILITY.
   In action for death of 60 year old man earning $3,000 a year, error, if any, in permitting his son to testify that he was of a long-lived stock of people was not prejudicial, where the verdict was for only $6,500.

5. RAILROADS ☞350(13) — INJURIES TO PERSONS—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.
   Evidence held to present a question for the jury as to contributory negligence of one killed at a railroad crossing.

6. RAILROADS ☞350(5)—CROSSING FLAGMAN —QUESTION FOR JURY.
   In action for death of wagon driver on crossing in village, under allegations that a temporary depot and a crossing track not ordinarily occupied by cars obstructed the view, it was error to submit the issue of negligence in failing to have a crossing flagman; there being, no statute or ordinance requiring the employment of a flagman.

7. TRIAL ☞330(5) — VERDICT — SEVERAL COUNTS.
   Rule that, if proof is sufficient to show negligence of defendant in any one of three acts charged, judgment for plaintiff should be sustained, does not apply where the case was submitted upon a general charge, the verdict was general, and there was nothing to show upon which charge of negligence the verdict was returned.

8. RAILROADS ☞350(8) — INJURIES TO PERSONS—QUESTIONS FOR JURY—WARNING.
   In action for death of wagon driver when struck by train at crossing in village, it was for the jury whether the railroad was negligent in having no lookout on the rear car of the train which backed into and upon deceased, and, in view of conflicting evidence, whether the bell of the train was rung.

9. DEATH ☞18(3)—RIGHT TO DAMAGES—DEPENDENCY.
   The mere fact that a daughter of deceased was a school-teacher and capable of supporting herself does not bar her right to recover for her father's death if she suffered pecuniary loss by reason thereof.

Appeal from District Court, Gray County; W. R. Ewing, Judge.

Action by Martha A. Tisdale and others against the Panhandle & Santa Fé Railway Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Terry, Cavin & Mills, of Galveston, and H. E. Hoover and Hoover & Dial, all of Canadian, for appellant. Kimbrough, Underwood & Jackson, of Amarillo, and Chas. C. Cook, of Pampa, for appellees.

HALL, J. Appellees Martha A. Tisdale and May Belle Tisdale, for themselves and for C. B. Tisdale, Ira Tisdale, Will C. Tisdale, Hal Tisdale, and Edward H. Tisdale, instituted this suit against appellant to recover damages alleged to have been sustained by appellees on account of the death of C. R. Tisdale, the husband of Martha A. Tisdale and the father of the other plaintiffs. Plain-

tiffs alleged, in substance, that the defendant's line of railway at Pampa, Tex., crossed the main street of that town, and that on the 15th day of June, 1915, C. R. Tisdale was lawfully traveling along said street in a buggy, and at a public crossing in the town of Pampa, and while crossing the track, one of defendant's trains struck the vehicle in which he was riding, causing his immediate death; that the street along which C. R. Tisdale was traveling crossed the railroad tracks, and was used by the public for traveling and in passing over the defendant's line of road; that said crossing was upon one of the principal streets of the town, upon which many persons were traveling and passing at all times, and especially about the time of the accident; that Pampa was one of the largest towns in Gray county, containing about 1,500 inhabitants, and having at that time within its limits a large number of working men, in addition to its ordinary population, engaged in working upon improvements under construction in the town and working in the nearby harvest fields. The acts of negligence upon which plaintiffs based their right to recover are in substance as follows: (1) That it was the duty of the defendant company to maintain a flagman or watchman at the crossing where the accident occurred to warn the public of the approach of trains and to warn its employés in charge of the train of the presence of persons attempting to use the crossing, especially inasmuch as defendant was moving a great many trains at different times across said crossing at said time; (2) and that at said crossing where the accident occurred the defendant kept, maintained, and operated as a part of its line of road, a certain side track or spur running parallel with the other tracks and about 30 feet north of the same, which extended to the west line of the street, but did not cross the street, that on the day of the accident defendant had a number of cars standing on said side track, which obstructed the view of travelers so that a person traveling along the public road and street and approaching the public crossing from the north, or from Pampa, could not see down the track westward, or discover the approach of its engine and cars from the West, that the defendant's temporary depot was so situated that cars on said side track in connection with said temporary depot likewise obstructed the view of passengers or persons crossing the said public crossing, and that it was negligence which proximately caused the injury and death of C. R. Tisdale; (3) that when the said C. R. Tisdale drove upon said public crossing the defendant, without any warning or notice whatever, by ringing the bell and blowing the whistle, or otherwise, did, by means of an engine attached thereto, move and push a number of cars along its track with great speed upon the public crossing, without having any one standing at said crossing and without having any person on the last car from the engine give any warning or notice to persons who might be lawfully about to cross the track. It is further alleged that at the time of his death C. R. Tisdale was 68 years old; that he was earning about $3,000 a year, which earnings were devoted entirely to the plaintiffs.

Appellant railway company answered by general and five special exceptions, general denial, pleas of contributory negligence and assumed risk, and further that at the time its train struck and killed C. R. Tisdale it was operated by a crew of skilled employés in a careful and prudent manner, and in plain view; that prior to the accident the train had entered the yards at Pampa, which was a small town; that the railroad tracks were in open view; that the day was clear; that the train had been switching in the yards for some time prior to the accident with bell ringing and all noise incident to the movement of such a train; that its depot at that time consisted of a box car, lifted off the wheels and set on the ground; that there were no cars near the street where the accident occurred except a few which were over 100 feet north of the accident, and were necessarily there for the conduct of defendant's business; that just prior to the accident it was necessary for this train to take the siding; that it was a work train, and consisted of about eight cars coupled on in front of its engine; that the train pulled up to the switch, a point within 80 feet from the west line of the street, where the accident occurred, where it stopped; that the switch was thrown by the conductor, and the train then started on up to the crossing, which passed over the particular street crossing where the accident occurred; that when it pulled up and started from the switch the bell was ringing; when the caboose which was in front of the train of cars passed over the switch the conductor mounted it on the south side; that all of appellant's employés were at their proper places of duty and on the lookout; that the deceased, Tisdale, had resided for many years around Pampa, and had often crossed the track at this point; that he was familiar with the crossing, and knew that the defendant's tracks passed over the same; that its trains were liable to be operated thereon at any time; that the train was operated in a careful and prudent manner, and that the deceased came to his death by his own negligence in failing to look for the train when he knew or should have known that the train was there and was being operated on or near said street crossing; that the said Tisdale had started at a point north and near the crossing, and at the time he started the train was then switching in the yards with all the noise usually incident to the movement of such trains and in plain view of the deceased; that the deceased knew that he was about to cross the track where trains were liable to pass at any time;

that after he passed the house track on the north he was at all times in plain view of the defendant's trains then in the yard and about to take the side track; that the deceased carelessly and negligently drove into the defendant's moving train, and was injured under circumstances which the operators of the train could not prevent; that he was well aware or should have been of the danger of driving carelessly across its tracks at this place where its engines and cars were actually moving and where at all times they were liable to be moving; that he carelessly drove towards the train as aforesaid, talking to a party who was riding with him, and drove upon a track or right of way without stopping, looking, or listening, which he should have done; that if he had used any sort of diligence and paid any attention whatever to his surroundings, he could have both seen and heard the train then coming upon said side track, and should have prudently refrained from driving in front of it; that if he had in any wise used either his sense of seeing or hearing he could, and necessarily would, have observed the movement of the train and prudently refrained from driving upon its track; that without any sort of diligence on the part of said deceased for his own safety he negligently and carelessly, in plain view of defendant's moving train, drove in front of it, and was thereby necessarily injured. By first supplemental petition plaintiffs alleged that it was not true that the deceased, C. R. Tisdale, drove upon the crossing in front of defendant's moving train without looking or listening for the approach of trains, but as a matter of fact, owing to the cars that were standing on the storage or house track and the location of the cars with reference to the temporary depot, and with reference to the main tracks and sidings, it was impossible for the deceased as he approached said crossing from the north to see defendant's moving train until after he had passed the house track and had reached defendant's main track, by which time his horse and buggy and himself were so nearly upon the track upon which he was struck that he was in imminent peril, and, owing to the great and negligent speed of the train, was in such a position that he could not check his horse and stop his buggy before getting upon the track. A trial resulted in a verdict and judgment in the sum of $6,500.

[1] The first assignment of error is based upon the action of the court in overruling the appellant's special exception to that part of the petition charging that appellant's negligence consisted in failing to have a flagman or watchman at the crossing.

"The rule is recognized in this state in cases of unusually dangerous crossings and intersections of wagon roads or streets with railroad tracks at grade, arising from the large travel or operation of cars or the existence of obstructions or conflicting noises calculated to mislead or confuse those passing over such crossings, that it is proper to submit the failure of the railroad company to maintain a flagman at such point as actionable negligence predicated on the hypothesis that a person of ordinary prudence, operating trains under such circumstances, would have done so." So. Pac. Co. et al. v. Walker, 171 S. W. 265 (3).

It having been alleged in the petition that the view of travelers approaching said crossing from the direction in which the deceased was coming was obstructed by cars standing on the house track and by the temporary depot of defendant, under the rule above quoted the court did not err in overruling the exception.

[2] The second assignment of error is:

"The court erred in overruling and in not sustaining defendant's fifth special exception found in the fifth paragraph of defendant's special answer to plaintiff's petition, for the reasons stated, which are here referred to and made a part hereof."

Following this assignment there is no proposition or statement, but we are asked to adopt the proposition and statement under the first assignment. Neither the exception nor the paragraph, nor the substance of either, appear in the brief. Reference to the pleading shows that the fifth paragraph charges appellant with being negligent in failing to have some of the train crew on the back end of the car. The brief makes no reference to either the transcript, or statement of facts where either the pleading excepted to, the exception urged, or the order of the court, may be found. This is such a flagrant violation of the rules that the assignment cannot be considered.

[3] The third assignment insists that the court erred in permitting the witness Mathews to testify that he heard the division superintendent and the trainmaster of appellant company discussing the advisability of putting in a bell at this crossing; that they said the people coming from town could not hear well enough up the west end of the track, and it was advisable to put in a bell or provide some means of warning the public. The court qualified the bill by the statement that when this testimony was offered and objected to plaintiff's counsel stated that they only offered the testimony on the question of notice to the defendant company of the condition at the crossing in question prior to the time of the accident. Mathews testified that the division superintendent had general authority and control over the whole division, and while he did not have authority to make changes in the improvements on his division, it was his duty to recommend to those whose duty it was to make such changes. The evidence having been properly limited, and it appearing that the division superintendent had authority to recommend the very change suggested, we think the evidence was admissible. It is contended that, because this conversation occurred prior to the destruction of the depot by fire, the evidence should not have been admitted. This fact affects the

weight of the testimony only, and not its admissibility. What is here said disposes of the fourth assignment.

[4] The court permitted the son of the deceased, on direct examination, to testify, over appellant's objections, that deceased was of a long-lived stock of people. The objection was that there was no such charge in the petition, and that the proper proof of the life expectancy of deceased was by the introduction of mortality tables which the court had admitted. The decisions upon this question do not uniformly sustain the court's ruling, but the weight of authority seems to be in favor of the admission of the evidence. Chattanooga, etc., Railway Co. v. Clowdis, 90 Ga. 258, 17 S. E. 88; Love v. Detroit Railway Co., 170 Mich. 1, 135 N. W. 963; Sterling v. Union Carbide Co., 142 Mich. 284, 205 N. W. 755. The amount of the verdict does not indicate that the admission of this evidence was prejudicial.

[5] By the sixth assignment of error appellant contends that the court erred in permitting the jury to pass upon the issue of contributory negligence because it is asserted there is not sufficient testimony to warrant the court in presenting that issue. We do not assent to the proposition urged here. It appears that prior to the accident Tisdale, accompanied by R. P. Porter, in the former's buggy, was driving south on a main street of the town of Pampa, with the intention of crossing appellant's line of railway. It appears that there was north of the main line what is known as the house track, which left the main line several hundred feet west of the place of the accident, and ended at the west line of the street along which Tisdale and Porter were traveling; that there was one car loaded with ice, and possibly others, standing on the house track. This track was about 30 feet north of the main track. It is clear that after passing south beyond the car standing on the end of the house track the view of the main track toward the west was further obstructed by a temporary depot, situated on the north side of the main track. This depot was a box car, without the wheels, resting upon supports near the main track. Besides the house track, northwest of the temporary passenger depot, at a distance not shown by the testimony, was another old box car, which was used as a freight depot. If the map attached to the statement of facts correctly shows the location of the ice car and the two old box cars used for passenger and freight depots respectively, appellant's insistence that deceased was guilty of contributory negligence as a matter of law cannot be sustained. It appears from the evidence that the train which caused the death of Tisdale was a work train; that it came into Pampa from some point west of the town, and had pulled in on what is known as the passing track, some six feet south of the main line, in order that

a through freight train which had already whistled for the station might have the right of way over the main track. There is no positive testimony that the deceased failed to look and listen. The witness Porter, who, as stated, was in the buggy with Tisdale, testified as follows:

"On approaching the railroad we did not stop, and I did not look and listen, and I do not know whether or not Mr. Tisdale looked or listened, as we were busy talking."

One witness testified that the train which caused the death of Tisdale was backing in on the siding at the rate of about 18 or 20 miles an hour; that the car which struck him went about three car lengths beyond the place of the accident before it stopped. The engineer testified that he threw on the brakes as soon as the accident occurred, and there is evidence that the car itself was derailed. The fact that a derailed car would travel between 75 and 100 feet after being derailed and after the brakes had been thrown on tends to sustain the witness' statement that it was traveling 18 or 20 miles an hour, although it appears from other testimony that it had stopped and started again between 60 and 100 feet west of the place of the accident. The facts of this case are similar to the facts in the case of Hovey v. Sanders, 174 S. W. 1025, decided by this court. As stated in that case, the presumption is that the deceased did look and listen, and, there being no testimony to the contrary, the court could not hold as a matter of law that Tisdale was guilty of contributory negligence. We have not set out all the testimony bearing upon the issue, nor is it necessary to discuss the multitude of authorities cited in the briefs.

[6] The court, in a general charge, submitted to the jury the issue as to whether or not the appellant was negligent in failing to keep a watchman at the crossing where the accident occurred. The evidence upon this issue was uncontroverted to the effect that no watchman or flagman was kept there. Several witnesses testified to facts bearing upon this issue, showing that Pampa was a town of from 500 to 1,500 people, that the crossing was frequently used by the public, and that there was considerable traffic over it during the season of the year in which the accident occurred. It was shown that there were no factories or anything else that would make an unusual noise in the neighborhood of the crossing, and nothing that would keep a person from hearing the movement of freight trains. One witness testified that he had lived at Pampa a great many years, and that the principal noise to be heard in the town was the movement of trains. The rule laid down by 33 Cyc. p. 943, with reference to keeping flagmen at crossings is as follows:

"Unless required by statute, a railway company is ordinarily under no duty to maintain a flagman, lights, or gates at a crossing, and negligence cannot be predicated upon a mere

failure to do so, particularly as to one who is familiar with the crossing, although such failure may, together with other circumstances, be considered as evidence of negligence in operating the road. That such failure may constitute negligence where the conditions of the crossing are such that ordinary care or reasonable prudence would so require, the duty may exist independent of statute, but before the jury will be warranted in saying in the absence of statute that the company was negligent, it must be shown that such crossing is more than ordinarily hazardous; as, for instance, that it is in a thickly populated town or city, that the view of the track is obstructed, and that the crossing is much traveled and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason thereof."

It is admitted that there was no statute or city ordinance requiring a flagman at this crossing. The rule announced in Cyc. is a fair statement of the rule adopted in this state. So. Pac. Co. et al. v. Walker, 171 S. W. 265. While the obstructions to the view mentioned above 'existed at the time of the accident, it is not shown that the house track was full of cars ordinarily, and under the facts the court was not warranted in submitting this issue to the jury, and the appellant's objections to that portion of the charge should have been sustained.

[7] Appellees suggest that we should sustain the judgment if the proof is sufficient to show negligence on the part of appellant in any one of the three acts of negligence charged, and cites T. & F. S. Railway Co. v. Rea, 180 S. W. 945. The rule announced in the Rea Case is not applicable here. As stated, this case was submitted upon a general charge, and not upon special issues, and the verdict returned is a general one, and we are not able to determine on which particular act of negligence the jury based the verdict. There is nothing in the record which would tend to show that the finding was upon either of the other two issues submitted, and the rule announced by this court in Wichita Valley Railway Co. v. Somerville, 179 S. W. 671, that it must appear that an erroneous charge, calculated to mislead the jury, did not have that effect or the judgment will be reversed. is decisive of this question. Houston, etc., Ry. Co. v. Greer, 22 Tex. Civ. App. 5, 53 S. W. 58; St. Louis Southwestern Ry. Co. v. Anderson, 61 Tex. Civ. App. 374, 124 S. W. 1002; Williams Land Co. v. Crull, 59 Tex. Civ. App. 345, 125 S. W. 339; Davis et al. v. Cox, 176 S. W. 931; Ft. Worth Belt Ry. Co. v. McKinney, 145 S. W. 666; Sadrock v. Galveston, etc., Ry. Co., 141 S. W. 163, and the authorities there cited. This assignment and the ninth, which presents the same question, are sustained.

[8] The fact that no lookout was kept on the rear car of the train which backed into the siding and caused the death of Tisdale is uncontroverted, and the issue of negligence should have been submitted to the jury. While the evidence was conflicting with reference to the ringing of the bell, and a majority of witnesses testified in favor of appellant, still it was proper for the court, in view of the conflict, to submit this issue also.

[9] It was shown that at the time of the death of her father Miss May Belle Tisdale was living with her parents and was dependent upon her father for support. It is not shown that she had any source of revenue, though it does appear that she taught school the year before her father's death. The fact that she was a school-teacher and might have earned, by teaching, enough to support herself, does not bar her right to recover if she suffered pecuniary loss by reason of his death.

There are a number of assignments which we shall not discuss in detail, as many of them present questions already disposed of in what has heretofore been said. Such of the remaining assignments as have been properly briefed are all overruled.

For the reasons stated, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

Complying with the request of appellee, we find the following facts in addition to those already set out in the original opinion: We find that the street upon which the accident occurred was the main crossing of the railroad in the town of Pampa; that it was the main business street; that as shown by the map in evidence the accident occurred 210 feet east of Hobart's office on the main street; that after leaving Hobart's office, going toward the main track, there was no obstruction until Tisdale reached the point in 'the street where the house track ended; that there were several cars on the house track, extending from the line of the street west; that, as shown by the map, it was 50 feet from the house track to the main line where the accident occurred. Between the house track and the main line there was located a box car, about 60 feet west of the street; this box car was on the ground by the side of the main track, and was used as a temporary depot; further west, 50 feet, and near the house track, was another old box car used for a freight depot; 600 feet west of the street, and located between the house track and the main track, was a wellhouse and pumphouse; that the crossing was used by the town people and by the rural population living 15 or 20 miles southward and eastward from the crossing; that such farming population averaged about one family to each section of land; that at the time of the accident the wheat harvest was on, when travel was most active over the crossing; that there was a considerable transient population in the town at that time; that several buildings were in progress in the town, amongst them a new depot for the appellant; that at the time of the accident work on the depot had been stopped. Appellant's employés operating the train knew that the crossing was an important

one, and that at times there was heavy traffic over it.

The motion for rehearing is overruled.

