Whitbeck, J.
Plaintiff Ayesha Haque appeals as of right an Oakland County Probate Court order vacating appointment of fiduciary and an Oakland Circuit Court order denying superintending control. We affirm in part, reverse in part, and remand for further proceedings.
*297 I BASIC FACTS AND PROCEDURAL HISTORY ~
On October 16, 1997, Haque filed a petition for commencement of proceedings[1] with the probate court requesting that her decedent’s[2] will be -admitted to probate and that administration be granted to her as the personal representative named in the will. The petition indicated that Haque’s decedent died on April 25, 1995, at the age of forty-three. The petition further indicated that on the date of his death, Haque’s decedent was a resident of Columbus, Indiana; and was survived by his wife—Haque—and a nineteen-year-old son and a fourteen-year-old daughter, all of whom, at the time the petition was filed, resided in California. Most importantly, the petition stated that Haque’s decedent “left an estate to be administered in this County” and inserted the phrase “Cause of action wrongful death” in the line following the category “Personal estate.”[3] According to Haque, the statute of limitations on any wrongful death claim would expire at the end of the day on October 17, 1997. Haque further stated that she sought appointment as personal representative “so that she might file a wrongful death claim that day in the Circuit Court.”
On the same day that the petition was filed, October 16, 1997, the probate court, issued restricted letters of authority, appointing Haque as “temporary per *298 sonal representative” of her decedent’s estate. However, the probate court included the following restriction on the letters of authority:
The temporary personal representative has authority only to give notice to interested parties of a hearing to determine whether Oakland County is the proper venue in which to open this estate.
On October 17, 1997, according to intervening appellee William Beaumont Hospital, Haque filed a wrongful death action in the Oakland Circuit Court against Beaumont. The parties give this Court no further information with respect to this action and its status is basically irrelevant to the issues here.
On October 20, 1997, the probate court issued an order vacating appointment of fiduciary. This order stated that it denied “the request for Judicial Review to accept venue in this matter,” that it vacated the appointment of Haque as temporary personal representative, and that it vacated the “Acceptance of Trust and Restricted Letters of Authority.”
On October 22, 1997, Haque filed a complaint for superintending control in the Oakland Circuit Court. Haque averred that she and her decedent were domiciled in Columbus, Indiana, on April 25, 1995, but that between April 17, 1995, and April 25, 1995, her decedent was a patient in Beaumont. Haque alleged that, as a result of treatment received at Beaumont, her decedent died on April 25, 1995. She further alleged that at the time of her decedent’s death, no probate proceedings were instituted in Indiana because Haque had full rights of survivorship regarding all of her decedent’s property. Haque alleged that her attempt to institute probate proceedings in the probate court *299 was in conformity with the Michigan wrongful death act, MCL 600.2922; MSA 27A.2922, and the Revised Probate Code, MCL 700.21; MSA 27.5021, but that, nevertheless, the probate court refused to allow Haque to open an estate. Haque further alleged that the effect of the probate court’s October 20, 1997, order was to deny a nonresident plaintiff access to Michigan courts and to improperly limit the jurisdiction of the probate court. On October 29, 1997, the circuit court entered an order denying superintending control. Haque appeals the probate court’s October 20, 1997, order vacating appointment of fiduciary and the circuit court’s October 29, 1997, order denying superintending control.
II. STANDARD OF REVIEW
A. SUBJECT-MATTER JURISDICTION
Statutory interpretation and a determination whether subject-matter jurisdiction exists are questions of law reviewed de novo on appeal. Lane v Kindercare Learning Centers, Inc, 231 Mich App 689, 695; 588 NW2d 715 (1998); Smith v Smith, 218 Mich App 727, 729; 555 NW2d 271 (1996).
B. SUPERINTENDING CONTROL
“The grant or denial of a petition for superintending control is within the sound discretion of the court.” In re Goehring, 184 Mich App 360, 366; 457 NW2d 375 *300 (1990). Absent an abuse of discretion, we will not disturb the denial of such a request. Id.
m. SUBJECT-MATTER JURISDICTION
A. STATEMENT OF THE ISSUE
We consider the first issue on appeal to be whether a wrongful death cause of action constitutes an “estate” sufficient to invoke the jurisdiction of the probate court in the county in which the cause of action accrued.
B. RELEVANT STATUTORY PROVISIONS
The statute that defines probate court jurisdiction is MCL 700.21; MSA 27.5021:
The court has exclusive legal and equitable jurisdiction of all of the following:
(a) Matters relating to the settlement of the estate of a deceased person, whether testate or intestate, who was at the time of death domiciled in the county or was at the time of death domiciled out of state leaving an estate within the county to be administered, including, but not limited to, the following proceedings:
(i) The internal affairs of the estate.
(ii) Estate administration, settlement, and distribution.
(m) Declaration of rights involving estates, devisees, heirs, and fiduciaries.
(iv) The construction of a will.
(v) The determination of heirs.
The critical phrase, of course, with respect to a person such as Haque’s decedent, who at the time of his death was domiciled out of the state in Indiana, is the phrase “leaving an estate within the county to be *301 administered.” MCL 700.4(6); MSA 27.5004(6) broadly defines an “estate” as
the property of the decedent or other person whose affairs are subject to this act as the property is originally constituted and as it exists during administration.
The wrongful death act, MCL 600.2922; MSA 27A.2922, does not directly tell us whether a wrongful death cause of action is part of a decedent’s “estate,” as defined in MCL 700.4(6); MSA 27.5004(6). Rather, the wrongful death act simply states:
(1) Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to. maintain an action and recover damages, the person who or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured .... ■
(2) Every action under this section shall be brought by, and in the name of, the personal representative of the estate of the deceased person. [MCL 600.2922; MSA 27A.2922.]
We observe that a wrongful death action therefore has two requirements: (a) a death or injuries causing death caused by the wrongful act, neglect, or fault of another and (b) the wrongful act, neglect, or fault was such that, if death had not ensued, the injured party would have had a cause of action for damages. We also observe that under the first requirement, there are two possible situations: (1) death, presumably meaning instantaneous death, or (2) injuries causing subsequent death. Under the former situation, the decedent obviously would not be able to bring suit. *302 Under the latter situation, the injured party could, but was not required to, bring suit before that party died. If the injured party brought suit and the action was pending at the time of death, under MCL 600.2921; MSA 27A.2921, known as the survival act, the actions “may be amended to bring it under the next section” (e.g., under the wrongful death act, MCL 600.2922; MSA 27A.2922). If the injured party did not bring suit, that party’s “claim” survives death even though there was no action pending. See Theisen v Knake, 236 Mich App 249, 253; 599 NW2d 777 (1999):
In this case, the plain language of the statute [the Survival Act] states that “[a]ll actions and claims survive death.” It does not state that all pending actions and claims survive death. To read the term “pending” into the statute would amount to judicial construction where none is warranted. [Emphasis in the original.][4]
In any event, the cause of action granted to the personal representative of a decedent’s estate by the wrongful death act is a derivative one in that the personal representative is required to show that the decedent could have maintained the action if death had not ensued. Maiuri v Sinacola Constr Co, 382 Mich 391, 396; 170 NW2d 27 (1969).
We also observe that probate courts are courts of limited jurisdiction and derive their jurisdiction and power from statutory authority. In re Wirsing, 456 *303 Mich 467, 472; 573 NW2d 51 (1998); Manning v Amerman, 229 Mich App 608, 611; 582 NW2d 539 (1998).
C. THE EXISTENCE OF AN ESTATE
(1) INTRODUCTION
In the present case, it is uncontested that Haque’s decedent was domiciled in Indiana at the time of his death. Therefore, unless Haque’s decedent had an “estate” in Oakland County at the time of his death, there was nothing over which the probate court could assume jurisdiction. Haque asserts that a wrongful death cause of action constitutes “property of the decedent” such that her decedent could be considered to have had an “estate” in Oakland County that required administration. We agree.
(2) FINDLAY AND LOVE
In Findlay v Chicago & G T R Co, 106 Mich 700; 64 NW 732 (1895), the decedent was killed in a railroad accident and the administrator of her estate sued to recover damages for the death, claiming that the death was caused by the defendant railroad company. The Michigan Supreme Court was called on to consider whether, in circumstances where the “whole estate” of the decedent consisted of a right of action against the defendant railroad company, this right of action constituted assets of the estate. The wrongful death act then in existence was known as “Lord Campbell’s Act” and was frequently referred to as the “death act.” Section 8313 of Howell’s Annotated Statutes, adopted by the Legislature in 1848, stated:
*304 [W]henever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action, and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured . . . .[5]
Section 8314 of Howell’s Annotated Statutes stated:
Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate.
Section 5848 of Howell’s Annotated Statutes stated:
If such deceased person, at the time of his death, reside in any other State or country, leaving estate to be administered in this State, administration thereof shall be granted by the probate court of any county in which there shall be estate to be administered.
The Court, after reciting the three sections, then commented:
It is contended by defendant that the right of action for causing the death of the intestate does not constitute assets of the estate. We are of the opinion that the sections of the statute above quoted should be construed together. Section 8314 clearly contemplates that an administrator shall institute action, and distribute the funds received, if any. It could not have been contemplated by the legislature that *305 the right to bring this action could be made to depend upon the question of whether the deceased left other property. We think it was clearly the purpose to treat this right of action as assets for distribution, and we hold, in accordance with the weight of authority, that it constitutes such assets, within the meaning of section 5848. [Findlay, supra at 702 (emphasis supplied; citations omitted).]
In Love v Detroit, J & C R Co, 170 Mich 1; 135 NW 963 (1912), the Michigan Supreme Court considered the circumstances of an accident in which a child was severely injured while attempting to cross a railway track. The child survived for about eight hours following his injuries and then died. Id. at 3. After the child’s death, the administrator for the child brought suit against the defendant railroad company under the then-existing version of the survival act. Id. at 3-4. The Court observed that the survival act applies to rights or causes of action as well as to actions and then stated:
A right of action is as much property as is a corporeal possession, and, under the survival act, vests at once in the injured person upon the inflicting of the negligent injury, and, upon his subsequent death, becomes an asset of his estate to be collected and distributed in accordance with the administration statutes. [Id. at 4-5 (citations omitted).]
Although the distribution scheme of the current wrongful death act differs from that applicable at the time of the Love and Findlay decisions, those decisions have not been overruled. The probate judge in her brief, however, notes that Love was decided under the survival act, not the wrongful death act. Unlike the probate court, however, we do not view this distinction as being fundamental. In Maiuri, supra at 394-395, the Supreme Court noted:
*306 The present wrongful death act is an amalgamation of the remedies previously existing under the wrongful death and survival acts. It came about due to difficulties which had arisen under the previous acts as to the remedy if death resulted but was not known to have been instantaneous. Where the injuries result in death, survival and wrongful death actions now, by direction of the legislature, are to be brought under the wrongful death act. As a condition to a successful action under the wrongful death act, it must be shown that the decedent, if death had not ensued, could have maintained an action and recovered damages for his injuries. (RJA § 2922[1]). This is true even though the wrongful death act creates a new cause of action permitting recovery for the benefit of certain persons who had sustained pecuniary injury as a result of the decedent’s death. The language of the statute requiring that the decedent must have been able to maintain the action, “if death had not ensued,” has remained in the act throughout its legislative history. [Citations omitted.][6]
Here, presumably, Haque’s decedent did not die instantaneously. Under the situation that existed at the time Love was decided, that was the only circum *307 stance under which a suit under the wrongful death act, as it then existed, could have been instituted. Nor did Haque’s decedent institute suit while he was still alive. Under the current situation, such a situation was one of the two circumstances under which an action could be instituted under the survival act as it is now “amalgamated” with the wrongful death act. Rather, Haque, as her decedent’s personal representative, instituted suit after her decedent’s death. This situation is the other circumstance under which an action can be instituted under the survival act as it is now “amalgamated” with the wrongful death act. In simple terms, Haque has exercised her option under the survival act, MCL 600.2921; MSA 27A.2921, to bring an action under the wrongful death act, MCL 600.2922; MSA 27A.2922, for injuries that result in death.[7] This is not materially different from the situation in Love where the plaintiff proceeded under the unamalgamated survival act.[8]
*308 (3) ADDITIONAL STATUTORY INTERPRETATIONS
Further, statutory interpretation of the probate court jurisdictional statute, MCL 700.21; MSA 27.5021, and the wrongful death act, MCL 600.2922; MSA 27A.2922, support this conclusion. First, a decedent’s cause of action under the wrongful death act accrues on the date of the wrongful act and an accrued right of action has long been considered a vested property right. Hawkins v Regional Medical Laboratories, PC, 415 Mich 420, 436; 329 NW2d 729 (1982) (the mere fact that the legislative scheme requires that suits for tortious conduct resulting in death be filtered through the wrongful death act does not change the character of such actions except to expand the elements of damage available and a plaintiff has a “fully vested cause of action,” if at all, at the time of the alleged wrongful act); Grubaugh v City of St Johns, 384 Mich 165, 170; 180 NW2d 778 (1970) (T. M. Kavanagh, J.) (“It is axiomatic that the constitutional provision of due process extends to protect that ‘property’ construed to be a vested right and that generally an accrued right of action is a vested property right which may not be arbitrarily impinged.”) In essence, a *309 decedent’s cause of action under the wrongful death act—and we again note that the cause of action granted to the personal representative of a decedent’s estate by the wrongful death act is a derivative one— is a chose in action. See In re Thornton, 192 Mich App 709, 712-714; 481 NW2d 828 (1992) (while the proceeds of a medical malpractice, wrongful death suit did not exist at the time of the decedent’s death, the underlying “chose in action” did so that the proceeds could be distributed under the terms of the decedent’s will); Comm’r of Ins v Arcilio, 221 Mich App 54, 64; 561 NW2d 412 (1997) (a tort claim is a “chose in action” that is an asset).
Second, the wrongful death act specifically provides that wrongful death proceeds may include recovery for expenses for which a decedent’s estate is liable, including medical, hospital, funeral, and burial expenses. MCL 600.2922(6); MSA 27A.2922(6). Further, the estate is eligible to receive damages for a decedent’s conscious pain and suffering before death, thus increasing the value of the estate. MCL 600.2922(6); MSA 27A.2922(6).
(4) CONCLUSION
In summary, therefore, we conclude that Haque properly sought to invoke the probate court’s exclusive jurisdiction over the nonresident decedent’s estate, which consisted solely of a wrongful death cause of action that had accrued to Haque’s decedent in Oakland County. We hold that a wrongful death cause of action constitutes an estate sufficient to invoke the jurisdiction of the probate court in the county in which the cause of action accrued. Accord *310 ingly, the probate court erred in denying jurisdiction to open and administer the estate.
IV. SUPERINTENDING CONTROL
Haque contends that the circuit court erred in denying her request for superintending control over the probate court. We disagree.
MCR 5.801(B) governs which probate court orders are appealable of right to this Court. In the present case, the pertinent provision is MCR 5.801(B)(3)(a), which provides that an order appointing or removing a personal representative, or denying such an appointment or removal, is appealable of right to this Court. The superintending control power of superior courts is governed by MCR 3.302. In particular, MCR 3.302(D)(2) prescribes and limits the jurisdiction to issue superintending control orders and provides that when an appeal is available, a complaint for superintending control is inappropriate. Therefore, the circuit court properly denied Haque’s request for superintending control.
Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

 The petition checked the box delineated as “Independent” and later stated that Haque was seeking “independent administration.” There are three basic types of probate administration in Michigan: “supervised,” “independent,” and “small estate.” See MCL 700.10(5); MSA 27.5010(5), MCL 700.7(2); MSA 27.5007(2), and MCL 700.101; MSA 27.5101.

 Ayesha Haque’s decedent was her husband, Sazzadul Haque.

 The petition calls for an estimated dollar value of two types of property, “Real estate” and “Personal estate.”

 We understand that Theisen was not a wrongful death case and that the plaintiff conceded that she was not alleging that the defendants’ conduct caused injuries that resulted in death. Rather, the plaintiff alleged that the defendants’ conduct caused economic injuries, caused pain and suffering, and failed to prolong the decedent’s life. Thus, the plaintiffs claim was a medical malpractice action brought in her own name as personal representative.

 See Lincoln v Detroit & M R Co, 179 Mich 189, 198-199; 146 NW 405 (1914).

 In n 3, the Maiuri Court cited Jorgensen v Grand Rapids & I R Co, 189 Mich 537, 541; 155 NW 535 (1915). There, the Supreme Court summarized the then-existing distinction between the survival act and the wrongful death act:
Under the law and practice of this State it has been held that the statute commonly called the “death act” (3 Comp Laws, § 10427; 5 How Stat [2d Ed] § 13702) is applicable only to cases of instantaneous death; that where death is not instantaneous the action should be brought under the so-called “survival act” (3 Comp Laws, § 10117, 5 How Stat [2d Ed] § 12761); and that both rights of action, for the same injury, cannot exist at the same time. And while the “death act” is recognized as creating a new right of action, unknown to the common law, and authorizing damages with reference strictly to the pecuniary injury, suffered by certain beneficiaries, the “survival act” is treated as effecting a continuance of the right of action that had vested in the decedent, with such damages as he could have recovered, including the present worth of his probable future earnings had he lived. [Citations omitted.]

 We note that we are not implying, nor should the parties infer, any conclusion whatsoever with regard to whether Haque’s decedent suffered “injuries” at the hands of Beaumont, whether such injuries caused her decedent’s death, or whether these injuries were the result of the wrongful act, neglect, or fault of another.

 Our conclusion in this regard is supported by the opinion in Hawkins v Regional Medical Laboratories, PC, 415 Mich 420; 329 NW2d 729 (1982). There the Court stated:
It is clear . . . that a distinction was drawn as to whether death from a wrongful act was instantaneous, in which case the action lay under the “wrongful death” statute, or whether there was a period of survival, thus requiring that the action be maintained under the “survival act.” This distinction was crucial since the claims were mutually exclusive and the measure of damages was substantially different.
The strict application of this temporal distinction not only spawned numerous suits over what “instantaneous death” meant, but also created pleading problems where the “time of death” issue was close.
*308 Confusion in the application of these two statutes was ended when the Legislature, by the enactment of a new wrongful death act, 1939 PA 297, combined the two acts, requiring that all actions for injuries resulting in death be brought thereunder. 1939 PA 297 actually took the form of an amendment to the existing wrongful death act and provided for the repeal of any inconsistent provisions of the “survival act”. . . .
After some initial difficulty in construing this new statute, it was made unmistakably clear by this Court. .. that the survival act was not repealed but was incorporated into the new death act to form a single ground of recovery in cases where tortious conduct caused death. [Id. at 430-432 (citations omitted).]